# 14-554-cv

## United States Court of Appeals

*for the*

## Second Circuit

YUKOS CAPITAL S.A.R.L.,

*Petitioner-Appellee,*

v.

OAO SAMARANEFTEGAZ,

*Respondent-Appellant.*

**On Appeal from the United States District Court
for the Southern District of New York**

**BRIEF OF PETITIONER-APPELLEE YUKOS CAPITAL S.A.R.L.**

Robert L. Weigel
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Yukos Capital S.a.r.l. ("Yukos Capital") (a private, nongovernmental party) certifies that Yukos Capital is wholly owned by Yukos International UK BV, 100% of the shares of which are held by Stichting Administratiekantoor Yukos International. No publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................1

ISSUES PRESENTED................................................................6

COUNTER-STATEMENT OF THE CASE ...........................................7

    I.    The Arbitral Award ................................................................7

    II.    Russian Actions................................................................8

        A.    The Neft-Aktiv Action ................................................8

        B.    The Samara Enforcement Action....................................9

    III.    The New York Enforcement Action ......................................9

    IV.    Fraudulent Transfers by Samaraneftegaz...........................10

    V.    Post-Judgment Enforcement Proceedings...........................10

        A.    The Turnover Order ................................................11

        B.    Order Denying Motion for Reconsideration.......................12

        C.    Post-Judgment Discovery Orders ................................13

SUMMARY OF ARGUMENT ........................................................15

ARGUMENT ................................................................17

    I.    The District Court Properly Issued A Turnover Order Against Samaraneftegaz ................................................................17

        A.    The Turnover Order Does Not Offend Comity .....................19

            1.    Samaraneftegaz Failed to Adequately Raise its Comity Analysis Below................................................19

            2.    There Is No True Conflict of Law ................................20

                (a)    There Is No Conflict between the Turnover Order and the Samara Enforcement Decision......22

# TABLE OF CONTENTS
## (continued)

Page

3. There Is No Conflict Between the Turnover Order and the Neft-Aktiv Decision ............................................ 27

B. The Russian Court Decisions Are Not Entitled to Comity ....... 34

C. Comity Favors Enforcing the U.S. Judgment ........................... 35

II. The Turnover Order Is Proper under New York Law ........................ 37

A. Yukos Capital sufficiently identified assets for turnover ........ 37

B. Service of the motion on Samaraneftegaz's counsel was proper ........................................................................................ 39

III. The District Court Properly Exercised Its Discretion In Restraining The Fraudulent Conveyance Of Samaraneftegaz's Assets ............................................................................................... 42

IV. The District Court Correctly Found that Samaraneftegaz Fraudulently Transferred Assets ............................................... 42

V. The Restraining Order Satisfies the Requirements of Section 5222 of the CPLR ........................................................ 44

VI. The Restraining Order Also Satisfies the Requirements of an Injunction Pursuant to Federal Rule 65 .............................. 45

THIS COURT LACKS JURISDICTION TO REVIEW THE POST-JUDGMENT DISCOVERY ORDERS ......................................... 47

THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO COMPEL SAMARANEFTEGAZ'S COMPLIANCE WITH THE DISCOVERY REQUESTS ............................................................. 50

I. Yukos Capital's Post-Judgment Discovery Requests Are Properly Tailored to Aid in Enforcement of the Judgment ................ 50

II. The District Court Properly Awarded Attorneys' Fees ..................... 57

CONCLUSION ............................................................................ 60

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ................................................................19

*Arista Records LLC v. Media Srvs. LLC*,
   No. 06 Civ. 15319 (NRB), 2008 WL 563470
   (S.D.N.Y. Feb. 25, 2008)......................................................... 41, 42

*Banco Cent. de Para. Humanitarian Found., Inc.*,
   No. 01 Civ. 9649 (JFK), 2006 WL 3456521
   (S.D.N.Y. Nov. 30, 2006)...................................................................58

*Bogle–Assegai v. Connecticut*,
   470 F.3d 498 (2d Cir. 2006) ............................................................20

*British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
   No. 90 Civ. 2370 (JFK) (FM), 2000 WL 713057
   (S.D.N.Y. June 2, 2000) ......................................................... 21, 52

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 2023 (2013) ................59

*Church of Scientology of California v. United States*,
   506 U.S. 9 (1992) ...........................................................................47

*Doctor's Assocs. v. Stuart*,
   85 F.3d 975 (2d Cir. 1996) ...............................................................18

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) ............................. 5, 47, 49, 50, 51, 53, 55

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   541 F.3d 476 (2d Cir. 2008) .............................................................19

*Epperson v. Entm't Express, Inc.*,
   242 F.3d 100 (2d Cir. 2001) .............................................................54

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*,
   CIV.A. 03-08554, 2009 WL 1055673 (S.D.N.Y. Apr. 17, 2009).......................21

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ..................................................................32

*FCS Advisors, Inc. v. Fair Fin. Co., Inc.*,
   605 F.3d 144 (2d Cir. 2010) ....................................................27

*Finanz AG Zurich v. Banco Economico S.A.*,
   192 F.3d 240 (2d Cir. 1999) ....................................................19

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
   281 F.3d 48 (2d Cir.2002) ........................................................51

*Gryphon Dom. VI, LLC v. ARP Int'l Fin. Co., B.V.*,
   836 N.Y.S.2d 4 (N.Y. App. Div. 2007) ............................. 3, 18, 34, 44

*Hartford Fire Ins. Co. v. California*,
   509 U.S. 764 (1993) ..................................................................20

*HBE Leasing Corp. v. Frank*,
   48 F.3d 623 (2d Cir. 1995) ................................................. 42, 43

*Hulley Enter. Ltd v. The Russian Fed'n*,
   PCA Case No. AA 226 (July 18, 2014) .............................33

*In re Am. Preferred Prescription, Inc.*,
   255 F.3d 87 (2d Cir. 2001) ......................................................48

*In re Joint E. & S. Dists. Asbestos Litig.*,
   22 F.3d 755 (7th Cir. 1994) .....................................................48

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ....................................................20

*In re S. Afr. Apartheid Litig.*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) .....................................21

*Interpool Ltd. v. Patterson*,
   No. 89 Civ. 8501 (LAK), 1995 WL 105284
   (S.D.N.Y. Mar. 13, 1995) ........................................................45

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) .................................................................19

*JW Oilfield Equip., LLC v. Commerzbank AG*,
764 F. Supp. 2d 587 (S.D.N.Y. 2011)............................. 28, 29, 31, 36

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan
Minyak Dan Gas Bumi Negara*,
335 F.3d 357 (5th Cir. 2003) ...............................................................25

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan
Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007) .................................................. 25, 26, 35

*Kight v. IPD Printing & Distrib., Inc.*,
427 F. App'x 753 (11th Cir. 2011)........................................................32

*Klein v. Torrey Point Group, LLC*,
979 F. Supp. 2d 417 (S.D.N.Y. 2013) ..................................................59

*Koehler v. Bank of Bermuda Ltd.*,
12 N.Y.3d 533 (N.Y. 2009) ....................................................... 3, 18, 22

*Koehler v. Bank of Bermuda Ltd.*,
544 F.3d 78 (2d Cir. 2008)...................................................................17

*Lam Yeen Leng v. Pinnacle Performance Ltd.*,
474 F. App'x 810, 814-15 (2d Cir. 2012)............................................50

*Libaire v. Kaplan*,
760 F. Supp. 2d 288 (E.D.N.Y. 2011)..................................................52

*Linde v. Arab Bank, PLC*,
706 F.3d 92, 114 (2d Cir. 2013),
*cert. denied*, 134 S. Ct. 2869 (U.S. 2014) ............................. 31, 36, 47

*Lothian Oil (USA), Inc. v. Sokol*,
526 F. App'x 105 (2d Cir. 2013)................................................... 48, 49

*Michael Linet, Inc., v. Village of Wellington*,
408 F.3d 757 (11th Cir. 2005) .............................................................32

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Milliken & Co. v. Bank of China*,
  758 F. Supp. 2d 238 (S.D.N.Y. 2010) ............................................................. 31, 36

*Motorola Credit Corp. v. Uzan*,
  561 F.3d 123, 126 (2d Cir. 2009) ......................................................................... 19

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004), *cert. denied,* 544 U.S. 1044 (2005) ................. 29, 34

*N.Y. State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989) ............................................................................... 56

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012), *cert. denied,* 134 S. Ct. 201 (2013) .......... 45, 46, 47

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 2819 (2014) .................... 46

*Northern Mariana Islands v. Millard*,
  845 F. Supp. 2d 579 (S.D.N.Y. 2012) .................................................................. 54

*Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*,
  No. 11 Civ. 1237 (AJN)(JCF), 2013 WL 466198
  (S.D.N.Y. Feb. 7, 2013) ....................................................................................... 56

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*
  *Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) .................................................................................. 42

*Pashaian v. Eccelston Props., Ltd.*,
  88 F.3d 77 (2d Cir. 1996) ......................................................................... 43, 45, 46

*Piratello v. Philips Elec. N. Am. Corp.*,
  360 F.3d 506 (5th Cir. 2004) ................................................................................ 48

*R.F.M.A.S., Inc. v. So*,
  640 F. Supp. 2d 506 (S.D.N.Y. 2009) .................................................................. 32

*RCA Corp. v. Tucker*,
  696 F. Supp. 845 (E.D.N.Y. 1988) ...................................................................... 43

vi

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2250 (2014) ............................................................... 5, 52, 56

*Richmark Corp. v. Timber Falling Consultants, Inc.,*
   937 F.2d 1444 (9th Cir. 1991) .......................................................48

*Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*,
   680 F.2d 743 (11th Cir. 1982) .......................................................48

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006) ...........................................................19

*RSM Prod. Corp. v. Fridman*,
   No. 06 Civ. 11512 (DLC), 2007 WL 1515068
   (S.D.N.Y. May 24, 2007) ........................................................ 41, 42

*Safadjou v. Mohammadi*,
   964 N.Y.S.2d 801 (N.Y. App. Div. 2013).......................................40

*Starbare II Partners, L.P. v. Sloan*,
   629 N.Y.S.2d 23 (N.Y. App. Div. 1995).........................................18

*Sterling Drug, Inc. v. Bayer AG*,
   14 F.3d 733 (2d Cir. 1994) ...........................................................23

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   351 F. App'x 467 (2d Cir. 2009).....................................................5

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   584 F.3d 396 (2d Cir. 2009) ......................................... 4, 5, 29, 34, 35

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   587 F. Supp. 2d 594 (S.D.N.Y. 2008) ........................... 5, 22, 26, 37, 54

*Thai Lao Ignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic*,
   No. 10 Civ. 5256 (KMW), 2011 WL 4111504
   (S.D.N.Y. Sept. 13, 2011) .............................................................59

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
   900 F.2d 522 (2d Cir. 1990) .........................................................58

vii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Trust v. Kummerfeld,*
  153 F. App'x 761 (2d Cir. 2005)..........................................................40

*United States v. Fabric Garment Co.,*
  383 F.2d 984 (2d Cir. 1967) ...............................................................49

*Universitas Educ., LLC v. Nova Grp., LLC,*
  No. 11 Civ. 1590 (LTS) (HBP), 2013 WL 3328746
  (S.D.N.Y. July 2, 2013)......................................................................57

*Westport Ins. Corp. v. Goldberger & Dubin, P.C.,*
  255 F. App'x 593 (2d Cir. 2007)........................................................20

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz,*
  963 F. Supp. 2d 289 (S.D.N.Y. 2013) ........................................ 33, 35

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
  126 F.3d 15 (2d Cir. 1997) .................................................................26

**Statutes**

Sergei Magnitsky Rule of Law Accountability Act of 2012, Pub. L. No. 112-208,
  126 Stat. 1504 (Sec. 402(a)(13)) .................................................. 9, 35

**Rules**

Fed. R. Civ. P. 26(b)(1)...........................................................................51

Fed. R. Civ. P. 26(b)(2)(C)(iii) ...............................................................58

Fed. R. Civ. P. 37(a)(5)...........................................................................59

Fed. R. Civ. P. 37(a)(5)(A) .....................................................................58

Fed. R. Civ. P. 4(f)(1) .............................................................................41

Fed. R. Civ. P. 5(a)(1)(B) .......................................................................39

Fed. R. Civ. P. 5(b)(1).............................................................................40

Fed. R. Civ. P. 59(e)................................................................................19

viii

# TABLE OF AUTHORITIES
(continued)

Page(s)

Fed. R. Civ. P. 60(b) ...................................................................................19

Fed. R. Civ. P. 65 ............................................................................... 12, 45

Fed. R. Civ. P. 69(a)(1) .................................................................. 17, 44, 51

Fed. R. Civ. P. 69(a)(2) ...............................................................................51

Local Rule 6.3 of the United States District Court for
the Southern District of New York ......................................... 17, 31, 32

N.Y. C.P.L.R. § 308(5) ...............................................................................40

N.Y. C.P.L.R. § 5201 ..................................................................................38

N.Y. C.P.L.R. § 5222(b) .............................................................................44

N.Y. C.P.L.R. § 5223 ..................................................................................51

N.Y. C.P.L.R. § 5225 ...................................................... 2, 11, 38, 40

N.Y. C.P.L.R. § 5225(a) ........................................................................ 37, 38

N.Y. C.P.L.R. § 5225(b) .................................................................. 18, 40, 55

N.Y. C.P.L.R. § 5227 ........................................................................... 38, 55

## Other Authorities

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of
June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ....................................3

David D. Siegel, *New York Practice* § 509 (5th ed. 2011) .....................................51

Gary B. Born, INTERNATIONAL COMMERCIAL ARBITRATION
(Kluwer Law International, 2009) ................................................. 24, 25

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters, Nov. 15, 1965 [1969] 20 U.S.T. 361, T.I.A.S.
No. 6638 .................................................................................40

Restatement (Second) of Contracts § 360 .....................................................46

# TABLE OF AUTHORITIES
(continued)

Page(s)

Restatement (Third) Foreign Relations Law § 403 ..................................................21

**PRELIMINARY STATEMENT**

Respondent-Appellant OAO Samaraneftegaz ("Samaraneftegaz"), an indirect wholly-owned subsidiary of OJSC Rosneft Oil Company ("Rosneft")—a large oil company publicly traded on the London Stock exchange with assets and subsidiaries around the globe—borrowed over $100 million from Yukos Capital. Samaraneftegaz did not pay back the loans.

As the District Court found, Samaraneftegaz expressly agreed to submit to arbitration in New York under New York law, pursuant to the rules of the International Chamber of Commerce ("ICC"). As set forth more fully in the briefing of Samaraneftegaz's prior appeal, No. 13-3557-cv, a distinguished panel of three arbitrators considered evidence, including witness testimony and wire transfer records, and found that Samaraneftegaz received the money and did not pay it back. The arbitrators issued an award in favor of Yukos Capital ("Award"). After allowing substantial discovery from both sides, Judge Crotty granted summary judgment to Petitioner-Appellee Yukos Capital S.a.r.l. ("Yukos Capital"), finding that Samaraneftegaz had consented to arbitration in New York. Judge Crotty then confirmed the Award and entered judgment in the amount of $185.9 million ("Judgment").

This appeal concerns Samaraneftegaz's attempts to avoid paying the lawful Judgment of the District Court, despite the fact that it has revenues in excess of

1

$200 million per month and paid dividends to its parent of more than $1 billion during the pendency of the action to confirm the Award. Samaraneftegaz claims that the District Court lacked the power to authorize the most basic judgment enforcement tools—post-judgment asset discovery and a turnover order pursuant to Section 5225 of the New York Civil Practice Law and Rules ("CPLR").

After Samaraneftegaz failed to satisfy the Judgment or post a bond pending its appeal of the Judgment, Yukos Capital served post-judgment discovery demands on Samaraneftegaz and initiated post-judgment enforcement proceedings. The District Court found, based upon Samaraneftegaz's financial statements, that Samaraneftegaz had fraudulently transferred more than a billion dollars to its sole shareholder during the course of the litigation and accordingly enjoined any further fraudulent transfers by Samaraneftegaz to its corporate affiliates. Pursuant to Section 5525 of the CPLR, the District Court ordered Samaraneftegaz to either post a bond or to turn over sufficient assets to Yukos Capital to satisfy the Judgment. To date Samaraneftegaz has openly defied the District Court's order.

Samaraneftegaz also refused to comply with Yukos Capital's post-Judgment discovery requests on the basis of its self-serving (and incorrect) claim that its assets are not subject to execution. Yukos Capital moved to compel. The District Court ordered Samaraneftegaz to produce all responsive documents and answer all

2

interrogatories, which the District Court found were properly tailored in aid of enforcement of the Judgment.[1]

Each of the post-judgment orders at issue in this appeal share one common purpose: satisfaction, through well-established federal and New York law remedies, of the valid Judgment entered by the District Court. Samaraneftegaz does not dispute the authority of a district court to order a party over whom it has personal jurisdiction to turn over assets from outside the jurisdiction. Nor could it, as that is black letter New York law. *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 539-40 (N.Y. 2009); *see also Gryphon Dom. VI, LLC v. ARP Int'l Fin. Co., B.V.*, 836 N.Y.S.2d 4, 13-14 (N.Y. App. Div. 2007).

Instead, Samaraneftegaz claims that the District Court's orders conflict with two Russian court decisions. There is no conflict between the post-judgment orders and the Russian court decisions relied on by Samaraneftegaz, which concern (1) a separate proceeding to enforce the arbitral award in Russia; and (2) collusive Russian litigation designed to invalidate the underlying loans. The Russian decisions upon which Samaraneftegaz relies do not forbid Samaraneftegaz from

---

[1] The Judgment recognizes an arbitral award made in New York, pursuant to New York law, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("Convention") and requires Samaraneftegaz to repay commercial loans undisputedly made by Yukos Capital. An appeal of the Judgment is currently pending before this Court. *Yukos Capital S.a.r.l. v. OAO Samaraneftegaz*, No. 13-3557-cv ("Judgment Appeal").

satisfying a valid New York judgment. Accordingly, the District Court found Samaraneftegaz's argument below unsubstantiated. As Samaraneftegaz failed to establish a true conflict of foreign law, the District Court was not required to perform a comity analysis. Indeed, Samaraneftegaz failed even to argue that the District Court was required to apply specific comity factors until Samaraneftegaz moved for reconsideration. But even under the analysis belatedly invoked by Samaraneftegaz, comity favors enforcing a New York judgment confirming an arbitral made in New York against a party that consented to arbitrate in New York, pursuant to New York law.

This Court has affirmed the ability of the district court to issue orders to enforce New York judgments over the foreign law objections of the defendant, including injunctions designed to coerce compliance with a judgment. In *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009) ("*Telenor I*"), this Court affirmed the district court's order confirming an arbitral award over the Ukrainian defendant's objection that the award was contrary to Ukrainian law. The district court's judgment required the defendant to divest its share holdings in another Ukrainian company, among other specific enforcement provisions. The district court subsequently held the defendant and its corporate parents in contempt for failing to comply with the injunctive provisions of the judgment, rejecting as a defense the Ukrainian court orders supposedly forbidding compliance. *Telenor*

*Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 617-22 (S.D.N.Y. 2008) ("*Telenor II*"). This Court affirmed. *Telenor Mobile Commc'ns AS v. Storm LLC*, 351 F. App'x 467 (2d Cir. 2009). Similar to the facts at hand, the defendant in *Telenor* had sought to evade an agreement to arbitrate in New York, pursuant to New York law, and participated in collusive litigations in its home country intended to vitiate the award. This Court made clear that deferring to a foreign litigation under such circumstances would be contrary to the strong United States policy in favor of enforcing arbitral awards. *Telenor I*, 584 F.3d at 410-11.

The order of the District Court compelling Samaraneftegaz to fully respond to discovery requests in aid of execution of the Judgment also finds ample support in this Court's precedents. As this Court has recognized, "New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a [] broad sweep." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (affirming order enforcing post-judgment subpoena against non-party bank over objection of the Republic of Argentina), *aff'd sub nom.*, *Republic of Argentina v. NML Capital*, 134 S. Ct. 2250 (2014). Affirming this Court's decision in *EM Ltd.*, the United States Supreme Court rejected Argentina's argument that it could foreclose discovery through the "self-serving legal assertion" that its foreign assets are not subject to execution. *NML Capital*, 134 S. Ct. at 2258. Samaraneftegaz's manufactured foreign law

5

conflict—never advanced in its opposition to the motion to compel—is not properly before this Court. Any hardship claimed by Samaraneftegaz in connection with producing documents could be alleviated by posting a bond.

Accordingly, the District Court's orders should be affirmed in all respects.

## ISSUES PRESENTED

1.      Whether the District Court properly ordered Samaraneftegaz to turn over assets sufficient to satisfy the Judgment in light of clear New York law permitting a court to order the turnover of assets held abroad by a judgment debtor over whom the court has personal jurisdiction, where Samaraneftegaz failed to demonstrate any genuine foreign law conflict with such an order.

2.      Whether the District Court properly exercised its discretion in restraining further fraudulent transfers of Samaraneftegaz's assets.

3.      Whether the District Court properly exercised its discretion to deny Samaraneftegaz's motion for reconsideration, where Samaraneftegaz failed to demonstrate any fact or law overlooked by the District Court and submitted two declarations in violation of the District Court's Local Rules.

3.      Whether the District Court properly exercised its discretion in ordering Samaraneftegaz to comply with discovery requests seeking information about its assets, in aid of execution of the unsatisfied Judgment.

4.    Whether the District Court properly exercised its discretion in ordering Samaraneftegaz to pay Yukos Capital's attorneys' fees and expenses related to the motion to compel.

**COUNTER-STATEMENT OF THE CASE**

**I.    The Arbitral Award[2]**

In July 2004, Yukos Capital made two loans to its corporate affiliate Samaraneftegaz totaling RUR 2,415,890,000 (approximately $120 million).  SPA-2.[3]  It is undisputed that Samaraneftegaz never paid interest or repaid the loans.  JA-28-29.

On January 12, 2006, Yukos Capital filed a request for arbitration in New York with the ICC pursuant to the arbitration agreement contained in the loan agreements.  SPA-2.  A three-member tribunal of distinguished arbitrators heard evidence and determined that it had jurisdiction and that Samaraneftegaz was obligated to repay the loans, with interest.  *Id.*  Accordingly, on August 15, 2007, the ICC tribunal awarded Yukos Capital RUR 3,080,711,971, as well as $435,000

---

[2]  As this appeal concerns the District Court's post-judgment orders, Yukos Capital respectfully refers the Court to its briefing in the Judgment Appeal, for a complete statement of facts pertaining to the Judgment and underlying arbitral award.

[3]  Citations to "SPA-" are to the Special Appendix.  Citations to "JA-" are to the Joint Appendix.  Citations to "Dkt." are to the District Court docket.  Citations to "AOB" are to Appellant's Opening Brief.

7

in arbitration costs and $284,474.54 in legal fees ("Award"). *Id.*; JA-31; JA-129.

Samaraneftegaz never moved to vacate the Award.

## II.    Russian Actions

### A.    The Neft-Aktiv Action

In July 2007, while the arbitration was still pending, Samaraneftegaz's sole

shareholder Neft-Aktiv sued Samaraneftegaz and Yukos Capital in Russia, seeking

invalidation of the loans, claiming that they were part of a Russian tax evasion and

money laundering scheme ("Neft-Aktiv Action").  SPA-2-3; JA-129.

Samaraneftegaz, as a defendant, "conceded" that its obligations were invalid.  JA-

80.  Judge Crotty characterized the action as "a transparent attempt to avoid a

forum that it considered unfavorable."  JA-138.  On February 8, 2012—six years

after Yukos Capital commenced arbitration and more than one year after Yukos

Capital filed the petition to confirm the Award in the District Court—the Russian

court purportedly invalidated the loans.  SPA-3.  The decision was based on the

"facts" set forth in the second criminal conviction in Russia of Mikhail

Khodorkovsky, the former head of Yukos Oil—an action that did not involve

Yukos Capital.  JA-130.  Khodorkovsky has since been pardoned. The conviction

was expressly condemned by Congress for its "lack of credible charges,

intimidation of witnesses, violations of due process and procedural norms."  Sergei

8

Magnitsky Rule of Law Accountability Act of 2012,

Pub. L. No. 112-208, 126 Stat. 1504 (Sec. 402(a)(13)) ("Magnitsky Act").

## B.    The Samara Enforcement Action

On August 9, 2010, Yukos Capital filed a petition to enforce the Award in

Russia in the Samara Arbitrazh court ("Samara Enforcement Action").  SPA-2.  On

February 22, 2011, the Russian court issued its decision denying enforcement,

finding that Samaraneftegaz did not receive adequate notice of the arbitration

under Russian law and that the enforcement would violate Russian public policy

based on the supposed Russian tax evasion scheme.  *Id.*

## III.   The New York Enforcement Action

On July 9, 2010, Yukos Capital filed a petition to enforce the Award in the

District Court.  Dkt. 2.  By order dated July 24, 2012, the District Court held that

the arbitration agreement by which Samaraneftegaz consented to arbitration in

New York, under New York law, was valid.  JA-27-47.  By order dated August 9,

2013, the District Court confirmed the Award.  JA-126-42.  The District Court

found that Samaraneftegaz had adequate notice of the arbitration and rejected

Samaraneftegaz's claim that the judgment in the Samara Enforcement Action

should be given any collateral estoppel effect.  JA-133-35.  The Court also rejected

Samaraneftegaz's argument that confirmation would violate public policy by

giving effect to a Russian tax evasion scheme.  JA-137-40.  The Court held that

Samaraneftegaz failed to raise this defense in the arbitration, and that the Neft-Aktiv Action was a "transparent attempt to circumvent" the arbitration. JA-138. The District Court further found that Samaraneftegaz "failed to identify a well-defined and dominant public policy" that would preclude enforcement. JA-138. On October 2, 2013, the District Court entered Judgment in favor of Yukos Capital in the amount of $185,907,785.41. JA-144-46.

## IV.    Fraudulent Transfers by Samaraneftegaz

During the pendency of the New York proceeding, Samaraneftegaz fraudulently transferred virtually all of its cash to its sole shareholder and affiliates. In 2011, Samaraneftegaz paid more than $440 million in dividends to its sole shareholder, Neft-Aktiv, and recorded interest-free loans to its corporate affiliates totaling over $525 million. JA-157, ¶ 4; JA-195; JA-217; SPA-5. In 2012, Samaraneftegaz paid more than $770 million in dividends to Neft-Aktiv. JA-157, ¶ 4; JA-211. As a result, despite recording revenues of $3.5 billion and profits of more than $1 billion in 2012, Samaraneftegaz's cash position at the end of 2012 was less than $23,000. JA-157, ¶ 4; JA-197; SPA-5.

## V.    Post-Judgment Enforcement Proceedings

Samaraneftegaz did not satisfy the Judgment or post a *supersedeas* bond. Consequently, Yukos Capital initiated post-judgment enforcement proceedings in the District Court. Dkt. 148. Yukos Capital also served post-judgment discovery

requests on Samaraneftegaz in aid of execution of the Judgment.  JA-619-45; JA-647-56.

### A.     The Turnover Order

On January 9, 2014, the District Court granted Yukos Capital's motion for turnover and ordered Samaraneftegaz to either post a bond pending the resolution of its appeal or bring assets into the jurisdiction to pay the full amount of the Judgment ("Turnover Order").  SPA-1-10; SPA-11-12.  Pursuant to Section 5225 of the CPLR and the District Court's equitable power to protect its Judgment, the Turnover Order enjoined Samaraneftegaz from making any further loans or payments without fair consideration to its affiliates until it posted a bond or satisfied the Judgment.  SPA-12.  The District Court rejected Samaraneftegaz's claims that Yukos Capital cannot use Samaraneftegaz's assets in Russia to satisfy the Judgment, finding that the court had personal jurisdiction over Samaraneftegaz pursuant to the valid arbitration agreement and therefore could order it to turn over out-of-state property under New York law.  SPA-3-4.

The District Court also held that Samaraneftegaz's transfers of more than $1 billion to Neft-Aktiv during the pendency of the New York action constituted fraudulent conveyances under New York law.  SPA-4-5.  The District Court found that the "sizable transfers" to Samaraneftegaz's shareholder and corporate affiliates were "not made for fair consideration" and restrained Samaraneftegaz, pursuant to

11

Section 5222 of the CPLR, from "further depleting its holdings until it has paid the Judgment in full." SPA-5; SPA-12. The District Court also found that Samaraneftegaz's transfers to its affiliates "had the effect" of "frustrating Yukos Capital's ability to collect on the judgment" by "substantially depleting Samaraneftegaz's available assets," and therefore also held that Yukos Capital is entitled to injunctive relief pursuant to Federal Rule of Civil Procedure 65. SPA-5-7; SPA-12.

Finally, the District Court considered Samaraneftegaz's other arguments, including its argument that requiring Samaraneftegaz to turn over funds from Russia would constitute an impermissible enforcement of the Award in Russia. The District Court held that "Samaraneftegaz merely recycles its prior arguments in a transparent attempt to escape paying the Judgment . . . . [and] Samaraneftegaz cannot relitigate these issues after a valid judgment has been entered against it." SPA-9. The District Court further held that "[i]n addition to being repetitive, Samaraneftegaz's arguments are also strained and entirely unsubstantiated." *Id.*

### B.    Order Denying Motion for Reconsideration

On February 19, 2014, Samaraneftegaz moved to alter or amend the Turnover Order, claiming that the District Court "should have engaged in a comity analysis" and "did not address the question of potential criminal or civil liability" regarding Samaraneftegaz's officer and employees ("Reconsideration Motion").

12

Dkt. 174 at 1, 10.  In support of its motion, Samaraneftegaz submitted two new

declarations to the District Court in violation of Local Rule 6.3 of United States

District Court for the Southern District of New York, including a new Russian law

opinion.  JA-764-65; JA-798-851.

On April 2, 2014, the District Court denied Samaraneftegaz's

Reconsideration Motion.  SPA-13-14.  The District Court held that a "comity

analysis is unnecessary" because "there is no real conflict between U.S. and

Russian law."  SPA-14.  The District Court further held that "Samaraneftegaz's

remaining arguments merely rehash the same arguments the Court previously

rejected," and stated:  *To be abundantly clear: the Court has considered each of*

*these arguments and finds them entirely without merit."  Id.* (emphasis added).

## C.  Post-Judgment Discovery Orders

On October 17, 2013, Yukos Capital served Samaraneftegaz with document

requests ("Document Requests") and interrogatories ("Interrogatories")

(collectively, "Discovery Requests").  JA-619-45; JA-647-56.  On November 18,

2013, Samaraneftegaz informed Yukos Capital that it would "not produce any

documents or communications in response" to the Document Requests, and that,

other than the information contained in its public filings and general denials of

assets in the United States, Samaraneftegaz would "not provide any additional

information in response to" the Interrogatories.  JA-658-91; JA-693-755.  After

good faith efforts to negotiate with Samaraneftegaz failed to yield any documents,
Yukos Capital moved to compel Samaraneftegaz to comply with the Discovery
Requests.  Dkt. 162; Dkt. 169.  Samaraneftegaz argued in opposition that its assets
were not subject to execution, but never claimed that producing documents would
violate Russian law.  Dkt. 185.

On April 17, 2014, the District Court ordered Samaraneftegaz (i) to produce
all documents responsive to the Document Requests and (ii) to respond fully to all
Interrogatories ("April 17 Order").  SPA-15-17.  The District Court held that the
discovery "may well be useful in enforcing the Judgment against Samaraneftegaz's
assets that are held by third parties" and that "Yukos Capital is entitled to
discovery regarding the location of those assets."  SPA-16.  The District Court
overruled Samaraneftegaz's objections and found that the Discovery Requests are
"properly tailored" to satisfy the Judgment.  *Id.*  Finally, the District Court ordered
Samaraneftegaz to pay Yukos Capital's attorneys' fees and costs related to the
motion to compel.  SPA-17.

Yukos Capital again negotiated in good faith with Samaraneftegaz regarding
discovery.  Samaraneftegaz represented that it would provide additional documents
and information in response to the Discovery Requests.  Dkt. 205.  Samaraneftegaz
provided a limited number of documents and one supplemental Interrogatory
response, related to its litigation in Russia, then refused to provide information

14

about any of its assets or business relationships. *Id.* Dkt. 209. Accordingly, Yukos Capital requested that the District Court set a date certain for Samaraneftegaz to comply, and on June 23, 2014, the District Court ordered Samaraneftegaz to comply with its April 17 Order by July 18, 2014 ("June 23 Order"). Dkt. 213. The District Court stated: "Samaraneftegaz will not be granted any additional time after that date." *Id.* To date, Samaraneftegaz still refuses to comply with the District Court's unambiguous order.[4] On October 6, 2014, Yukos Capital filed a motion with the District Court seeking contempt and sanctions. Dkt. 220.

## SUMMARY OF ARGUMENT

I.      The District Court properly issued the Turnover Order. The Convention leaves each enforcing state to use its coercive powers to enforce a confirmed award in the same way that it would enforce a judgment of its own courts, as the District Court properly did in this case.

---

[4] Samaraneftegaz contends that compliance with the April 17 Order is impossible because it would subject Samaraneftegaz's officers and employees to criminal liability. Samaraneftegaz's position rests on (i) a "clarification" order from the Samara Arbitrazh Court, and (ii) a letter from the Russian Prosecutor's office—both of which were requested by Samaraneftegaz only after it faced a potential contempt motion in June 2014—and neither of which support its contention. *See* Letter from Samaraneftegaz to Hon. Catherine Wolfe, Clerk of Court, U.S. Ct. of Appeals for 2d Cir. (Sept. 19, 2014) (Judgment Appeal) ("Rule 28(j) Letter"); Letter from Yukos Capital to Hon. Catherine Wolfe, Clerk of Court, U.S. Ct. of Appeals for 2d Cir. (Sept. 26, 2014) (Judgment Appeal) (Response to Rule 28(j) Letter).

A. The District Court entered the Turnover Order pursuant to the enforcement procedures set forth in the CPLR, as incorporated by Federal Rule 69. New York law allows the court to order the turnover of out-of-state assets by a person over whom the court has jurisdiction. The District Court was not required to engage in a comity analysis before entering the Turnover Order because there is no true conflict between the Turnover Order and the Russian court decisions cited by Samaraneftegaz. Moreover, even if the District Court had engaged in a comity analysis, comity favors enforcing the District Court's Judgment. The Turnover Order also is proper under New York law because Yukos Capital identified sufficient assets (which Samaraneftegaz does not deny holding) and properly served the motion on Samaraneftegaz's counsel.

B. The District Court properly exercised its discretion in restraining Samaraneftegaz from continuing to fraudulently convey its assets. The District Court found that Samaraneftegaz already had fraudulently transferred assets during the pendency of this litigation, and the restraining order that the District Court issued satisfied the requirements of Section 5222 of the CPLR and Federal Rule 65.

II. The District Court properly exercised its discretion in denying Samaraneftegaz's Reconsideration Motion. Samaraneftegaz failed to demonstrate that the District Court had overlooked any fact or law in deciding to enter the

16

Turnover Order. Samaraneftegaz argued for the first time that the District Court should have weighed specific comity factors set forth in the Restatement (Second) of Foreign Relations Law ("Restatement"), and submitted two declarations in violation of Local Rule 6.3. The District Court properly rejected these new arguments and soundly exercised its discretion in denying the motion.

III.     This Court lacks jurisdiction to review the District Court's post-Judgment discovery orders because they are not final orders subject to appellate review. Even if this Court does review the orders, there was no abuse of discretion in ordering Samaraneftegaz to produce documents and answer interrogatories tailored to aid in enforcement of the Judgment. The District Court also properly exercised its discretion in directing Samaraneftegaz to pay Yukos Capital's attorneys' fees and costs related to its motion to compel in light of Samaraneftegaz's unjustified opposition.

## ARGUMENT

## I.     The District Court Properly Issued A Turnover Order Against Samaraneftegaz

Post-judgment enforcement proceedings are governed by "the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1); *see also Koehler*, 544 F.3d 78, 85, *certified question answered*, 12 N.Y.3d 533 (N.Y. 2009) ("Under Federal Rule of Civil Procedure 69(a), a district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the

17

district court sits.").  In New York, "that law is the New York Civil Practice Law and Rules," and Section 5225 "authorizes a court to order the delivery of property that belongs to a judgment debtor but is not in his possession." *Id.*; N.Y. C.P.L.R. § 5225(b) ("Upon motion of the judgment creditor, upon notice to the judgment debtor . . . the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . . "). New York's highest court has made clear that "judgment debtors can be ordered to turn over out-of-state assets under CPLR article 52." *Koehler*, 12 N.Y.3d at 539-40; *see also Gryphon Dom.*, 836 N.Y.S.2d at 13-14 (reversing trial court denial of motion to turn over contents of debtor's foreign bank accounts because "the court could order the defendant judgment debtor to turn over property because it had personal jurisdiction over the defendant") (citing *Starbare II Partners, L.P. v. Sloan*, 629 N.Y.S.2d 23, 23 (N.Y. App. Div. 1995)).  The District Court had personal jurisdiction over Samaraneftegaz pursuant to Samaraneftegaz's consent to arbitrate in New York.  JA-27; SPA-4; *see, e.g.*, *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.").  Accordingly, the District Court properly ordered Samaraneftegaz to turn over its assets in satisfaction of the Judgment.

### A.    The Turnover Order Does Not Offend Comity

The District Court's "decision to extend or deny comity to a foreign proceeding" is reviewed for abuse of discretion.  *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999).[5]  The District Court's denial of relief under Federal Rules of Civil Procedure 59(e) and 60(b) are likewise reviewed for abuse of discretion.  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (Rule 60(b)); *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) (Rule 59(e)).

### 1.    Samaraneftegaz Failed to Adequately Raise its Comity Analysis Below

Although Samaraneftegaz now engages in a discussion of the comity factors set forth in the Restatement (AOB 37–44), it first invoked these factors in its Reconsideration Motion.  Dkt. 154, 174.  Samaraneftegaz's new comity argument was improperly placed before the District Court.  *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that Rule

---

[5]   The "more rigorous" standard of review cited by Samaraneftegaz is only appropriate when reviewing "dismissal of an action based on considerations of international comity" and thus "a court's decision to abstain from exercising jurisdiction."  *Royal & Sun Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 422 (2d Cir. 2005) (reviewing "a district court's decision to abstain on international comity grounds").  Such a heightened standard is not applicable here, because the District Court did not dismiss the action or otherwise abstain from exercising jurisdiction.

59 is not a vehicle for . . . taking a second bite at the apple.") (internal quotations omitted); *Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 595 (2d Cir. 2007) ("New arguments based on hindsight . . . do not provide grounds for Rule 60(b) relief."). Accordingly, Samaraneftegaz has waived this argument on appeal by failing to adequately raise it below. *See Bogle–Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (alteration in original) (quotation and citation omitted); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) ("[T]he circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal.") (quotations, brackets, and ellipsis omitted).

## 2. There Is No True Conflict of Law

A comity analysis is only relevant where there is a "true conflict between domestic and foreign law." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993) (finding no conflict between Sherman Act and British law and refusing to engage in a comity analysis). "No conflict exists, for these purposes, 'where a person subject to regulation by two states can comply with the laws of both.'" *Id.* (quoting Restatement (Third) Foreign Relations Law § 403). The burden to show a foreign law conflict lies with the party asserting a conflict. *See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370 (JFK) (FM), 2000 WL

713057, at *8 (S.D.N.Y. June 2, 2000); *see also Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, CIV.A. 03-08554, 2009 WL 1055673, *2 (S.D.N.Y. Apr. 17, 2009).

Samaraneftegaz failed to establish the existence of a true conflict below. Samaraneftegaz contends that the District Court "inappropriately relied" on *In re South African Apartheid Litigation*, 617 F. Supp. 2d 228, 285 (S.D.N.Y. 2009). AOB 32-33. However, the District Court properly applied the international comity standard set forth in that case to the facts of this case. "International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction," and "[t]here is no conflict for comity purposes where a person subject to regulation by two states can comply with the laws of both." *In re S. Afr. Apartheid Litig.*, 617 F. Supp. 2d at 283 (quotations and footnote omitted). Here, the District Court correctly concluded that Samaraneftegaz has not shown that compliance with the Turnover Order would cause it to violate Russian law. SPA-14. Yukos Capital submitted an expert report on Russian law demonstrating that no Russian law, and neither of the Russian court decisions relied on by Samaraneftegaz, prohibit compliance with a valid judgment of a U.S. court confirming an arbitral award pursuant to a treaty to which the Russian Federation

21

is a party.[6]  JA-950-71.  Accordingly, the District Court correctly held that no

conflict exists between the Turnover Order and the Russian decisions relied on by

Samaraneftegaz, and therefore a "comity analysis is unnecessary."  SPA-14.

> **(a)  There Is No Conflict between the Turnover Order and the Samara Enforcement Decision**

The Turnover Order does not concern satisfaction or enforcement of the

Award *in Russia*.  Rather, the Turnover Order enforces the undisputed right of a

judgment creditor to execute on the valid judgment of a federal court pursuant to

New York state law remedies.  *See Koehler*, 12 N.Y.3d at 539-40 ("[J]udgment

debtors can be ordered to turn over out-of-state assets under CPLR article 52.").

By submitting to New York arbitration and thereby consenting to the jurisdiction

of the District Court (*see* JA-27-47), Samaraneftegaz is subject to the judgment

enforcement mechanisms set forth in the CPLR.  *See Telenor II*, 587 F. Supp. 2d at

617 (Defendant "agreed to resolve disputes with [plaintiff] by arbitration in New

York, knowing that this might present conflicts with the laws and courts in

Ukraine.").  Samaraneftegaz wrongly conflates the turnover of its out-of-state

assets to *satisfy the Judgment*—as ordered by the District Court—with *enforcing*

---

[6] Samaraneftegaz's attempt to undermine Yukos Capital's expert fails. (AOB at 33 n.8)  The District Court was already familiar with Gladyshev's credentials, having relied on his prior opinion in the order granting summary judgment on personal jurisdiction.  *E.g.*, JA-34, JA-37.  Gladyshev refuted every point put forward by Samaraneftegaz's purported expert through references to Russian statutory and case law. JA-950-1092.

*the Award in Russia*. *Compare* AOB 26 ("[T]he Turnover Order avowedly requires transfer of Russian assets to enforce the Award.") *with* SPA-4 ("Yukos Capital is entitled to a turnover order for Samaraneftegaz's out-of-state assets in order to satisfy the Judgment."). The decision of the Russian court refusing to enforce the Award in Russia has no bearing under the Convention on the ability of the New York court to invoke any procedure available in the forum to cause a judgment debtor to satisfy a New York judgment confirming an arbitral award. AOB 39 (acknowledging that under the Convention, each state "shall recognize arbitral awards as binding and *enforce them in accordance with the rules of procedure of the territory where the award is relied upon*") (emphasis added). The decision of the Russian court merely prevents Yukos Capital from using the Russian courts to enforce the Award in Russia. It does not purport to enjoin Samaraneftegaz from satisfying a valid judgment of a New York court.[7]  Indeed,

---

[7]  Samaraneftegaz cites *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733 (2d Cir. 1994), to support its argument that a conflict exists because the Judgment somehow requires that Samaraneftegaz "voluntarily compromis[e] in Russia the rights that it litigated and won." AOB 27. In *Sterling Drug Inc.*, this Court held that, where "the holder of rights in a mark under German law [was] ordered by a United States court to refrain from use of that mark protected by German law," it was necessary for the district court to "carefully craft[]" an "extraterritorial injunction" pursuant to the Lanham Act that would "prohibit only those foreign uses of the mark by Bayer AG that are likely to have significant trademark-impairing effects on United States commerce." *Sterling Drug, Inc.*, 14 F.3d at 747. This narrow decision, rendered in the particular context of international trademark enforcement, is inapposite. The District

*(Cont'd on next page)*

23

the Russian decision does not enjoin Samaraneftegaz from doing anything.

Accordingly, there is no "direct conflict" between the Turnover Order and the

Samara Enforcement decision, as Samaraneftegaz can comply with the laws of

both jurisdictions.[8]

The Turnover Order is consistent with the Convention's procedures for

enforcing the Award in the United States. Arbitral awards, once confirmed, are to

be given effect in the domestic courts of State parties "in the same manner as a

judgment of that state's courts." Gary B. Born, INTERNATIONAL

COMMERCIAL ARBITRATION (Kluwer Law International, 2009) at 2330.

"This includes coercively 'enforcing' the award/judgment against the assets of the

award/judgment-debtor, in accordance with local legislation governing the

execution and enforcement of judgments." *Id.* The Russian court's decision has

no bearing on enforcement mechanisms available to Yukos Capital in *this*

---

*(Cont'd from previous page)*

Court's enforcement of its own Judgment via the Turnover Order does not
conflict with the decision of the Russian courts not to enforce the Award in
Russia.

[8] Samaraneftegaz argues that Yukos Capital cannot "now be heard to complain
about the Russian Enforcement Decision or to criticize the Russian judiciary"
because it "initiated the Russian action for the same reason as this proceeding."
AOB 27-28. That Yukos Capital initiated an enforcement proceeding in Russia
has no bearing on its rights to enforce under New York law.

jurisdiction. The District Court remains free to use the full range of its execution powers, including Section 5225 of the CPLR.

Non-enforcement in another jurisdiction is not a ground for resisting execution on a U.S. judgment. *See* Born at 2673 ("If an award is denied recognition in a national court outside the place of the arbitration, . . . the award can be taken to other jurisdictions, and efforts can be made to recognize and enforce it anew."). Indeed, this Court has explained that "[f]ederal courts in which enforcement of a foreign arbitral award is sought cannot dictate to other 'secondary' jurisdictions under the Convention whether the award should be confirmed or enforced in those jurisdictions . . . . But federal courts *do* have inherent power to protect *their own* judgments." *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 126 (2d Cir. 2007) (emphasis in original). Therefore, the decision of the Russian court, a secondary jurisdiction, not to enforce the Award has no bearing on its enforcement elsewhere—least of all the United States, the Award's primary jurisdiction. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003) ("Under the [New York] Convention, the country in which, or under the arbitration law of which, an award was made is said to have primary jurisdiction over the arbitration award.") (quotations omitted); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d

25

Cir. 1997) ("[U]nder the Convention, the power and authority of the local courts of the rendering state remain of paramount importance.")

Nothing in the Convention or implementing legislation restricts enforcement to assets located within the enforcing jurisdiction, and Samaraneftegaz fails to point to any relevant authority that says otherwise. Indeed, Samaraneftegaz fails to cite a single case where a court found that comity weighed against ordering turnover of assets from a foreign jurisdiction. This is consistent with the District Court's authority to enjoin a foreign entity over whom the court has jurisdiction—even with respect to acts to be performed within its home jurisdiction—to give effect to an order enforcing an award under the Convention. *See Karaha Bodas*, 500 F.3d at 126 (affirming anti-suit injunction against foreign litigation because public policy "would be undermined were we to permit [appellant] to proceed with . . . litigation that is intended to vitiate an international arbitral award that the federal courts have confirmed and enforced") (quotations and citations omitted); *Telenor II*, 587 F. Supp. at 621-22 (finding that collusive litigation in the Ukraine rendered judgment debtor judgment proof, holding defendant in contempt, and ordering defendant to divest of shares in another Ukrainian entity or deposit all shares with the court).

### 3. There Is No Conflict Between the Turnover Order and the Neft-Aktiv Decision

Samaraneftegaz makes a similar mistake regarding the collusive Neft-Aktiv Action, confusing a payment by Samaraneftegaz *in satisfaction of a valid federal judgment* with a payment under the original loan agreements. AOB 28 (arguing that the Neft-Aktiv Action prohibits "making a payment to satisfy obligations under the Loan Agreements."). This distinction is critical. The Judgment is separate and distinct from the loans or the Award. *See FCS Advisors, Inc. v. Fair Fin. Co., Inc.*, 605 F.3d 144, 148 (2d Cir. 2010) (the "general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract") (quotations and citation omitted).

The Neft-Aktiv court did not purport to enjoin payment of the Award or any judgment arising from the Award, nor did it establish that payment of any such judgment would result in any criminal liability for anyone in Russia. Rather, the Neft-Aktiv court explicitly stated that its decision had no effect on the pre-existing Award, stating that the Award "cannot be revised during the examination of this case" and "do[es] not coincide in terms of the subject and the grounds of the claims." JA-86. The Russian appellate court likewise confirmed that the "Award was not revised during the examination of this case either." JA-110. Under Russian law, as under U.S. law, an arbitral award constitutes a "separate source of obligations distinct from those arising out of a contract." JA-954.

27

The Neft-Aktiv Action was a civil case that did not purport to determine or create any criminal liability with respect to the loan agreements. Thus, the District Court correctly held, just because a Russian court "invalidated a contract between the parties on the grounds that the contract constituted a sham transaction," it "does not follow . . . that Samaraneftegaz will act contrary to Russian law by transferring assets to satisfy a foreign judgment."[9] SPA-14. Samaraneftegaz's reliance on *JW Oilfield Equipment, LLC v. Commerzbank AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011), is futile. AOB 32. In that case, the court held that a comity analysis was "appropriate" where a *non-party* bank holding the judgment debtor's funds in Germany objected to a turnover order on the ground that "German banking law does not allow a German bank to respond to an execution of a foreign judgment unless ordered to do so by a German court," and pointed to an express German law prohibition relating to the payment of foreign judgment. 764 F. Supp. 2d at 596. As Samaraneftegaz concedes (AOB 32), the court in *Commerzbank* ultimately determined that "international comity [did] not require [it] to decline to enforce the

---

[9] The District Court had already found that the Neft-Aktiv Action was an attempt to "circumvent" the arbitration, and declined to adopt Samaraneftegaz's argument that it should defer to the Neft-Aktiv findings concerning the loans. JA-133, 138. Accordingly, the District Court properly concluded that "Samaraneftegaz cannot relitigate these issues after a valid judgment has been entered against it." SPA-9. The District Court found that these arguments were not only "repetitive" but also "strained and entirely unsubstantiated." *Id.*

28

judgment . . . through turnover proceedings in this district." 764 F. Supp. 2d at 598.

Second, Samaraneftegaz's argument is based on the collusive lawsuit brought *against* Samaraneftegaz in Russia by its shareholder Neft-Aktiv over a year and a half after Yukos Capital filed its request for arbitration. JA-127-29. Neft-Aktiv received over $1 billion in dividends from Samaraneftegaz during the pendency of the enforcement proceeding and had every incentive to invent a lawsuit so that Samaraneftegaz would not have to pay its legitimate creditor. SPA-5. In addition, Samaraneftegaz, which did not challenge the validity of the loans in the arbitration, filed a pleading stating that it believed the loans were invalid. JA-80. Accordingly, the District Court correctly concluded that the Neft-Aktiv Action was "a transparent attempt to circumvent" a legitimate arbitration. JA-138.

This Court has held that "orders of foreign courts are not entitled to comity if the litigants who procure them have deliberately courted legal impediments to the enforcement of a federal court's orders." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005) (quotations and citation omitted). Samaraneftegaz and its shareholder Neft-Aktiv acted in concert to invalidate the loans. *See Telenor I*, 584 F.3d at 409-10 (finding a foreign litigation collusive because it was a "cooperative venture among allied interests" filed with the sole purpose of undermining arbitral proceedings). Samaraneftegaz

29

cannot hide behind the collusive Neft-Aktiv lawsuit to avoid paying the Judgment, because "[Samaraneftegaz's] situation, like that of the apocryphal parricide seeking mercy because he has been orphaned, is entirely of its own making." *Id*.

Third, although Samaraneftegaz contends that Russian criminal law applies because the civil judgment was based in part on "the prior criminal convictions of Yukos Oil's former management," satisfying the valid U.S. Judgment would not "consummate" an illegal action. AOB 29-30. Yukos Capital has never been charged with, let alone convicted of, tax evasion or money laundering. No Russian court decision or statute forbids payment of this Court's Judgment. JA-466. Notably, Samaraneftegaz does not rely on the actual criminal conviction of Mikhail Khodorkovsky, which has been expressly condemned by Congress, as well as numerous international governments and organizations. *See, e.g.*, Magnitsky Act, Sec. 402(a)(13) ("The second trial, verdict, and sentence against former Yukos executives Mikhail Khodorkovsky and Platon Lebedev evoke serious concerns about the right to a fair trial and the independence of the judiciary in the Russian Federation.").

The District Court, after reviewing the Russian law reports submitted by both parties, correctly dismissed Samaraneftegaz's argument that the Neft-Aktiv court's reliance on the Khodorkovsky conviction in the context of a civil decision implicates Russian criminal law in this case. SPA-14. Samaraneftegaz's argument

30

that a payment in satisfaction of the Judgment would amount to "a criminal act"

(AOB 31) is purely speculative. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 114

(2d Cir. 2013), *cert. denied*, 134 S. Ct. 2869 (U.S. 2014) ("[T]he mere threat of

criminal prosecution abroad does not strip our courts of the authority to order

production of relevant materials in private civil litigation."); *JW Oilfield Equip.,*

764 F. Supp. 2d at 598 (bank faced "merely speculative civil liability"); *Milliken &*

*Co. v. Bank of China*, 758 F. Supp. 2d 238, 250 (S.D.N.Y. 2010) (bank's claim of

hardship "speculative at best").  Samaraneftegaz's argument is also belied by the

2010 payment of a Dutch judgment by Rosneft based on another similar loan made

by Yukos Capital.  In that case, the payment of the Dutch judgment was made even

though a Russian appellate court had annulled the arbitral award in Russia, without

subjecting Rosneft or its employees to criminal liability.[10]  Finally, Samaraneftegaz

failed to establish that it would be illegal under Russian law for Samaraneftegaz to

post a bond.  SPA-9-10; SPA-12.

---

[10]  Samaraneftegaz's ultimate parent, Rosneft, satisfied a $420 million Dutch
judgment recognizing an arbitral award ordering repayment of loans made by
Yukos Capital to Samaraneftegaz's sister company Yugansknefegaz.  JA-387.
That arbitral award was annulled by the Russian courts and the underlying loans
were invalidated as part of the same supposed "tax evasion scheme" asserted
here.  JA-367-83.  Rosneft disclosed in its financial statement that it had
"arranged for relevant payments to be made" on the Dutch judgment.  JA-387.
There is no suggestion that anyone was charged with any crime as a result, nor
did Rosneft disclose in its financials that payment would expose Rosneft to
liability.  *Id.*

Samaraneftegaz claims that the District Court "ignored" the "substantial evidence" it presented. AOB 30. Samaraneftegaz's purported "expert" opinion on Russian law (JA-798-891) was improperly submitted to the District Court with Samaraneftegaz's Reconsideration Motion. *See* Local Rule 6.3 ("No affidavits shall be filed by any party unless directed by the Court."); *R.F.M.A.S., Inc. v. So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) ("A court must narrowly construe and strictly apply Rule 6.3."). The rule applies to motions, like Samaraneftegaz's, filed pursuant to Rules 59 and 60 even when the motion itself "makes no reference to Local Civil Rule 6.3." *Id*. at 508. Accordingly, the District Court was permitted to ignore the Vasilyev declaration. *See Kight v. IPD Printing & Distrib., Inc.*, 427 F. App'x 753, 755 (11th Cir. 2011) (quoting *Michael Linet Inc., v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)) ("A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"); *cf. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quotations and citation omitted) (Rule 59(e) "may not be used to . . . present evidence that could have been raised prior to the entry of judgment.").

Finally, Samaraneftegaz's recycled argument that an alleged Russian tax fraud should preclude enforcement of a New York arbitral award was properly rejected by the District Court in entering Judgment and was rejected a second time,

as there is no U.S. public policy authorizing enforcement of foreign tax laws.
*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz,* 963 F. Supp. 2d 289, 294-300
(S.D.N.Y. 2013) (rejecting Samaraneftegaz's claims that enforcement of the
Award would violate public policy). On reconsideration, this "repetitive"
argument was again denied by the District Court as "strained and entirely
unsubstantiated." SPA-9. The factual basis of Samaraneftegaz's argument was
recently rejected by a distinguished international arbitral tribunal, which found that
"the primary objective of the Russian Federation was not to collect taxes but rather
to bankrupt Yukos and appropriate its valuable assets." *Hulley Enter. Ltd v. The*
*Russian Fed'n*, PCA Case No. AA 226 (July 18, 2014), Final Award, at 255,
*available at* http://italaw.com/sites/default/files/case-documents/italaw3278.pdf
(last visited Oct. 8, 2014). Further belying Samaraneftegaz's claims of tax fraud,
the European Court of Human Rights ruled on July 31, 2014 that the Russian
Federation must pay Yukos Oil's former shareholders $2.5 billion as just
satisfaction for violations of the Convention on Human Rights. *See OAO*
*Neftyanaya Kompaniya Yukos v. Russia*, App. No. 14902/04 (July 31, 2014),
Judgment, at 11, *available at*
http://hudoc.echr.coe.int/webservices/content/pdf/001-145730?TID=hazuzccahr
(last visited Oct. 8, 2014).

33

**B.** **The Russian Court Decisions Are Not Entitled to Comity**

The Neft-Aktiv Action was collusive. The District Court held that it was filed in the face of an express arbitration provision while the arbitration was ongoing. JA-138. The District Court did not abuse its discretion in refusing to grant comity to the Neft-Aktiv decision. As this Court held: "It is [] well established [] that orders of foreign courts are not entitled to comity if the litigants who procure them have deliberately courted legal impediments to the enforcement of a federal court's orders." *Uzan*, 388 F.3d at 60 (quotations and citation omitted); *see also Telenor I*, 584 F.3d at 410 ("[Defendant's] situation . . . is entirely of its own making."); *Gryphon Dom.*, 836 N.Y.S.2d at 37 (ordering turnover of funds from Indonesia, refusing to give comity to Indonesian court judgment declaring contract unlawful). Here, there can be no doubt that Samaraneftegaz "deliberately courted legal impediments to the enforcement" of the Judgment. *Id.* Neft-Aktiv, Samaraneftegaz's sole shareholder and the recipient of more than $1 billion in dividends in 2011 and 2012, brought collusive litigation in Russia in "a transparent attempt to circumvent" a legitimate arbitration, resulting in a Russian court judgment declaring the loans invalid under Russian law. JA-138. That Russian court judgment is contrary to the District Court's holding that the arbitration agreement, which provides that the loans are governed by New York law, is valid. JA-43. Thus, the extension of "comity" to the Russian courts'

34

pronouncement that the loans are invalid is wholly inappropriate. *See Karaha Bodas*, 500 F.3d at 127 ("comity considerations, though important, have diminished force when a court has already reached a judgment involving the same issues and parties") (quotations and citation omitted).

### C.     Comity Favors Enforcing the U.S. Judgment

Even if a comity analysis were necessary, the result of that analysis favors the enforcement of a valid U.S. judgment.

First, the U.S. national interest here is strong. Yukos Capital's claim to enforce a Convention award made in New York pursuant to the Federal Arbitration Act arose in this country, not in Russia. This Court has held that "[t]o refuse to enforce a valid award in these circumstances would run counter to the strong public policy in favor of arbitration." *Telenor I*, 584 F.3d at 410-11. Similarly, U.S. public policy does not tolerate "litigation that is intended to vitiate an international arbitral award that the federal courts have confirmed and enforced." *Karaha Bodas*, 500 F.3d at 126.

The strong U.S. interest at stake here is further expressed in the Magnitsky Act, which advocates for "promoting the claims of United States investors in Yukos Oil Company." Section 202(a)(1)(B). Yukos Capital seeks to recover funds, including the Judgment, for the benefit of the subsidiaries, creditors and

shareholders of Yukos Oil. JA-454-63. Deference to Samaraneftegaz's interpretation of Russian law is contrary to public policy as expressed by Congress.

Second, as explained above, Samaraneftegaz's claims of liability under Russian law are entirely speculative. Accordingly, this factor weighs in favor of requiring turnover. *See Linde*, 706 F.3d at 114; *JW Oilfield Equip.,* 764 F. Supp. 2d at 598; *Milliken*, 758 F. Supp. 2d at 250.

The third and fourth factors—the nationality of the party and the territory in which the conduct asserted to be in conflict with foreign law will occur—are not determinative here. "Courts in this Circuit have noted that the first two factors are 'far more important in the balancing test than the last three.'" *JW Oilfield*, 764 F. Supp. 2d at 598.

Moreover, compliance need not take place in the Russian Federation. Yukos Capital established below that there is a very real question as to whether, and through what structures, Samaraneftegaz sells oil to Western oil companies. JA-1117-67. Samaraneftegaz's refusal to produce any documents concerning its sale of oil casts doubt, at a minimum, on whether its sales of oil are limited to the Russian Federation. Samaraneftegaz has paid more than a billion dollars in dividends since this action was filed. The ultimate recipients of those dividends—who have an interest in keeping the details hidden—may very well have assets outside of Russia. The fact that Samaraneftegaz is located in Russia therefore does

not outweigh the strong U.S. interest and lack of proven hardship to
Samaraneftegaz, particularly given its agreement to arbitrate in New York.
*Telenor II*, 587 F. Supp. 2d at 617 (where party "agreed to resolve disputes . . . by
arbitration in New York, knowing that this might present conflicts with the laws
and courts in Ukraine . . . . it must now 'accept the consequences' for the privileges
it sought" by agreeing to arbitrate in New York).

The final factor, whether the order "can reasonably be expected to achieve
compliance," also weighs in favor of upholding the Turnover Order. The District
Court has the power to hold Samaraneftegaz in contempt and impose significant
monetary sanctions to coerce compliance. *See id.* at 621-22 (finding defendants in
contempt of order to comply with judgment confirming arbitral award and
imposing significant escalating sanctions). Indeed, an even larger Dutch judgment
obtained by Yukos Capital against Rosneft was satisfied after orders of attachment
were issued by courts in the United States and Great Britain.

## II.    The Turnover Order Is Proper under New York Law

### A.    Yukos Capital Sufficiently Identified Assets for Turnover

Samaraneftegaz contends that Yukos Capital failed to specifically identify
money or personal property pursuant to Section 5225(a) of the CPLR. AOB 44-46.
Yukos Capital identified bank accounts disclosed in Samaraneftegaz's financial
statements. JA-197; JA-399. Samaraneftegaz admits that "[t]here is no credible

risk that Samaraneftegaz will become financially unable to satisfy the judgment. Dkt. 154 at 23. By virtue of Samaraneftegaz's financial statements and admissions, Yukos Capital has clearly "shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest." N.Y. C.P.L.R. § 5225(a). Samaraneftegaz's refusal to provide any further details about its assets does not foreclose Yukos Capital from the relief to which it is clearly entitled under New York law. As Samaraneftegaz acknowledged its substantial assets—indeed its financial statements show that it made $1 billion in profits in 2012 alone (*see* JA-210)—there is no injustice in requiring it to turn over the $185 million owed to Yukos Capital.

Samaraneftegaz argues that Yukos Capital is required to "show (1) 'that the asset it seeks to collect has been made available to judgment creditors by § 5201' and (2) 'that the party against which the creditor has chosen to proceed has the ability to produce the asset.'" AOB 45-46 (quoting *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarollo*, 190 F.3d 16, 21 (2d Cir. 1999)). Yukos Capital has met these requirements. In *Grupo Mexicano*, this Court noted that a judgment creditor may only use the enforcement procedures outlined in Sections 5225 and 5227 to collect assets that have "been made available to judgment creditors by § 5201," specifically (1) debt owed to the judgment debtor, (2) property owned by the judgment debtor and in possession of the judgment debtor, and (3) property

38

owned by the judgment debtor but in the possession of some other party. *See Grupo Mexicano*, 190 F.3d at 20-21 (citing N.Y. C.P.L.R. § 5201). This Court also noted that, in order to obtain a turnover order pursuant to these provisions of the CPLR, the judgment creditor must show that it has proceeded against the party that has the ability to produce the asset. *See id.* In *Grupo Mexicano*, the judgment creditors had not established whether they were seeking to collect debt or property, or established who actually held the assets in question. *See id.* at 22-26. The Court thus remanded to the district court for determination of those issues. *See id.* at 26. No such ambiguities exist in this case.

### B. Service of the Motion on Samaraneftegaz's Counsel Was Proper

Judge Castel ordered alternative service of Yukos Capital's Petition on Cleary Gottlieb, counsel to Samaraneftegaz (as well as by mail and fax to Samaraneftegaz's corporate address) pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure when Yukos Capital first commenced this proceeding. *See* JA-290-91. Samaraneftegaz appeared and defended the action through counsel. Service of the motion on counsel for Samaraneftegaz was obviously effective to give notice to Samaraneftegaz of the turnover proceeding, which it vigorously opposed. Service on counsel of record is entirely appropriate in an ongoing action in which the District Court has already asserted personal jurisdiction. Fed. R. Civ. P. 5(a)(1)(B) and 5(b)(1) ("a pleading filed after the original complaint, unless the

court orders otherwise" served on a party represented by an attorney "must be made on the attorney unless the court orders service on the party").

Alternative service is also permissible in a special proceeding pursuant to Section 5225.[11] *See Trust v. Kummerfeld*, 153 F. App'x 761, 762-763 (2d Cir. 2005) (holding that judgment creditor's veil-piercing action pursuant to Section 5225(b) was properly served by certified mail in reasonable reliance on the district court's order permitting alternate service in the original action).

Although the Russian Federation is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 [1969] 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Service Convention"), the Russian Federation no longer transmits judicial documents from the United States. *See* Bureau of Consular Affairs, U.S. Department of State, Russia Judicial Assistance, *available at* http://tsgsandbox.his.com/law/judicial/judicial_3831.html (last visited Oct. 8, 2014) ("In July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters."). Accordingly, an attempt by

---

[11] Alternative service is also permitted under the CPLR. *See* N.Y. C.P.L.R. § 308(5); *Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-804 (N.Y. App. Div. 2013) (authorizing service by email where "reasonably calculated to apprise defendant of the pending lawsuit") (quotations and citation omitted).

Yukos Capital to serve Samaraneftegaz through the Hague Service Convention procedures would be futile.

Rule 4(f)(3) of the Federal Rules of Civil Procedure permits a court to direct service on a defendant in a foreign country by any "means not prohibited by international agreement." The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (citation and internal quotations omitted). "Court-directed service is particularly appropriate where a signatory to the Hague Service Convention has 'refused to cooperate for substantive reasons.'" *See Arista Records LLC v. Media Srvs. LLC*, No. 06 Civ. 15319 (NRB), 2008 WL 563470, at *1-*2 (S.D.N.Y. Feb. 25, 2008) (quoting the Advisory Committee's Notes to the 1993 Amendment to Fed. R. Civ. P. 4(f)(1), ordering substituted service on a Russian defendant).

The only additional requirement for court-directed service on a foreign defendant is that such service comports with due process, which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *RSM Prod. Corp.*, 2007 WL 1515068, at *1 (citation omitted). Accordingly, courts in this Circuit have ordered alternative service on a Russian

defendant by delivery to the defendant's counsel in New York. *Id.* at 2; *Arista Records*, 2008 WL 563470 at *2 n.3. As evidenced by Samaraneftegaz's opposition to the Turnover Order, service "apprise[d] [Samaraneftegaz] of the pendency of the action and afford[ed] them an opportunity to present [its] objections."

## III.  The District Court Properly Exercised Its Discretion In Restraining The Fraudulent Conveyance Of Samaraneftegaz's Assets

The District Court's grant of an injunction is reviewed for abuse of discretion. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 651 (2d Cir. 2004).

## IV.  The District Court Correctly Found that Samaraneftegaz Fraudulently Transferred Assets

There is no dispute that Samaraneftegaz paid dividends of more than $1 billion to its shareholder during the pendency of this lawsuit while refusing to pay its lawful creditor Yukos Capital. JA-157, ¶ 4; JA-211. Under Section 273-a of the New York Debtor and Creditor Law, a transfer is fraudulent as to a judgment creditor where (1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for money damages or a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633-37, 640 (2d Cir. 1995). There is no question that Samaraneftegaz was a defendant in this action

42

when it made dividend payments of $767 million in 2012 and $440 million in 2011 to its sole shareholder Neft-Aktiv.

New York law is clear that a corporation that refuses to pay its debts when due cannot make distributions to shareholders.[12] *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996) ("New York courts have carved out one exception to the rule that preferential payments of pre-existing obligations are not fraudulent conveyances: preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration") (citations omitted); *accord HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634-35 (2d Cir. 1995). As Samaraneftegaz has failed to satisfy the Judgment, the dividend payments made by Samaraneftegaz to Neft-Aktiv in 2011 and 2012 are fraudulent as to Yukos Capital under 273-a of the Debtor Creditor Law. Yukos Capital submitted evidence that Samaraneftegaz authorized payment of dividends in June 2012 and paid the dividend before its fiscal year ended in December. JA-211. The

---

[12] Samaraneftegaz's assertion that Russian law governs the legality of its distribution of assets (AOB 53-55) is incorrect in light of New York's strong interest in enforcing its judgment. *See RCA Corp. v. Tucker*, 696 F. Supp. 845, 855 (E.D.N.Y. 1988) (for choice of law purposes, "New York is the place where petitioners sustained their injury; it is here that they have been thwarted in their ability to collect their New York judgment"). Moreover, Russian law disallows payments to shareholders when a company has failed to pay lawful creditors. *See* JA-475-76, ¶¶ 62-63. In any event, proof of fraudulent conveyance is not a prerequisite to the restraint expressly authorized by CPLR Section 5222.

District Court thus had a strong basis to restrain such payments to protect the District Court's Judgment. *See, e.g.*, *Gryphon*, 836 N.Y.S.2d at 38 (holding that "[t]he injunction was clearly necessary to protect the court's order").

## V. The Restraining Order Satisfies the Requirements of Section 5222 of the CPLR

Yukos Capital requested less injunctive relief than it was statutorily entitled to under Section 5222, which allows a judgment creditor to restrain *all* of a judgment debtor's assets until the judgment is satisfied. Both New York state law, incorporated by Federal Rule 69(a)(1), and the District Court's equitable powers authorize restraint of further payments by Samaraneftegaz to its affiliates until the Judgment is satisfied. Section 5222 provides that a restraining notice "may be . . . served upon any person, except the employer of a judgment debtor . . . ." Further, "[a] judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest . . . ." N.Y. C.P.L.R. 5222(b). Accordingly, there can be no doubt that the District Court had authority under Section 5222 to enjoin Samaraneftegaz from making payments to its shareholder or other related entities, particularly where those payments would constitute fraudulent transfers. *See, e.g.*, *Gryphon*, 836 N.Y.S.2d at 38 (trial court "had the power to issue the injunction" enjoining defendants from transferring assets to Indonesia); *Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 WL 105284, at *1 (S.D.N.Y. Mar. 13,

1995) ("[a] New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right"); *see also Pashaian*, 88 F.3d at 87 (affirming injunction enjoining further disposition of fraudulently transferred assets).

**VI.    The Restraining Order Also Satisfies the Requirements of an Injunction Pursuant to Federal Rule 65**

In addition to the authority derived from the express language of the CPLR, as incorporated by Federal Rule 69(a), the District Court has the equitable power to enjoin Samaraneftegaz pursuant to Rule 65 of the Federal Rules of Civil Procedure.  In the post-judgment context, the likelihood that a judgment debtor will frustrate the judgment constitutes irreparable harm warranting equitable relief. This Court recently affirmed an injunction designed to give effect to a district court's order requiring Argentina to pay plaintiff bondholders on whose bonds Argentina defaulted.  In *NML Capital, Ltd. v. Republic of Argentina*, this Court affirmed a permanent injunction enjoining Argentina from making payments on certain "Exchange Bonds" issued pursuant to Argentina's debt restructuring without making comparable payments to the bondholders of bonds on which Argentina had defaulted.  699 F.3d 246, 250 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*").  The district court found that absent injunctive relief, plaintiffs had "no adequate remedy at law 'because the Republic has made clear . . . its intention to defy any money judgment issued by this Court.'"  *Id.* at 255.  This Court held:

> Insofar as Argentina argues that a party's persistent efforts to frustrate the collection of money judgments cannot suffice to establish the inadequacy of monetary relief, the law is to the contrary.

*Id.* at 262 (citing *Pashaian*, 88 F.3d at 87; Restatement (Second) of Contracts § 360, cmt. d). This Court affirmed this principle a second time in *NML Capital, Ltd. v. Republic of Argentina* ("*NML II*"), finding that the "district court put forward sufficient reasons for binding Argentina's conduct, regardless of whether that conduct occurs here or abroad," where the district court had found that Argentina "has done everything possible to prevent those judgments that have been entered [against it] from being enforced." 727 F.3d 230, 243-44 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) (alteration in original).

Similarly, here, Samaraneftegaz has made plain its intent to frustrate collection of the Judgment. Samaraneftegaz claims to have no assets in New York, and has structured its corporate affairs so as to give away nearly all its profits to its parent company, which is ultimately controlled by the Russian government. JA-162-283; JA-285-88. Significantly, Samaraneftegaz's refusal to produce any documents concerning its assets and business dealings frustrates Yukos Capital's ability to execute the Judgment against assets held by third parties. Yukos Capital therefore established irreparable harm. *See NML II*, 727 F.3d at 243-44; *NML I*, 699 F.3d at 262; *Pashaian*, 88 F.3d at 87.

Yukos Capital has already succeeded on the merits of its claim, having established its right to payment of the Judgment. The balance of the equities weighs heavily in favor of Yukos Capital because (1) the District Court entered a valid Judgment in favor of Yukos Capital; (2) any inconvenience to Samaraneftegaz can be easily remedied by Samaraneftegaz posting a bond; and (3) "[t]he public interest of enforcing contracts and upholding the rule of law" weighs in favor of injunctive relief. *See NML I*, 699 F.3d at 256. Therefore, even apart from its undisputed rights as a judgment creditor under Section 5222, Yukos Capital satisfies the test for injunctive relief.

## THIS COURT LACKS JURISDICTION TO REVIEW THE POST-JUDGMENT DISCOVERY ORDERS

"As a general rule, a district court's order enforcing a discovery request is not a 'final order' subject to appellate review. A party that seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order." *Church of Scientology of California v. United States*, 506 U.S. 9, 18 n.11 (1992); *see also EM Ltd.*, 695 F.3d at 206 ("Most orders granting discovery are not final decisions because they are effectively reviewable on appeal from a final judgment . . . or by an appeal from a contempt citation . . . ."). The same is true for an order granting attorneys' fees under Rule 37(a). *Linde*, 706 F.3d at 104, 120 (Rule 37 sanctions order is not entitled to interlocutory appeal).

47

These same principles apply to post-judgment discovery orders entered against a party—an order granting post-judgment discovery is not appealable absent a contempt order.  *See Piratello v. Philips Elec. N. Am. Corp.*, 360 F.3d 506, 508-09 (5th Cir. 2004) (holding that "the requirement of a sanction prior to an appeal specifically applies to post-judgment discovery orders to judgment debtors"); *In re Joint E. & S. Dists. Asbestos Litig.,* 22 F.3d 755, 760 (7th Cir. 1994) (joining "every other circuit to have considered the question in holding that, as a general rule, an order authorizing discovery in aid of execution of judgment is not appealable until the end of the case"); *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1449 (9th Cir. 1991) (holding that post-judgment orders granting discovery, such as those relating to judgment debtors "are not considered final judgments and may be appealed only after the issuance of a contempt order for failure to comply"); *Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 746 (11th Cir. 1982) (holding that "the granting of a post-judgment discovery motion is not an appealable final order").

This Court has explained that, although "orders entered post-judgment . . . are generally appealable," certain "ministerial or administrative [orders], such as post-judgment discovery orders," are not appealable as a final order.  *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92–93 (2d Cir. 2001); *accord Lothian Oil (USA), Inc. v. Sokol*, 526 F. App'x 105, 108 (2d Cir. 2013) (noting that

48

"[o]rdinarily, discovery orders are non-appealable interlocutory orders" and "we lack jurisdiction to review discovery orders necessarily incident to the bankruptcy court's pursuit of post-judgment discovery"); *United States v. Fabric Garment Co.*, 383 F.2d 984 (2d Cir. 1967) (holding, in a post-judgment enforcement proceeding, that an order directing a witness to answer questions is not a final decision).

The Discovery Orders are not a final decision.  *See EM Ltd.*, 695 F.3d at 205 ("In post-judgment litigation, the 'final decision' is not the underlying judgment that the plaintiff is attempting to enforce, but the subsequent judgment that concludes the collection proceedings.").  The April 17 Order and the June 23 Order (collectively, "Discovery Orders") at issue are routine post-judgment orders compelling Samaraneftegaz to provide discovery in aid of execution of the Judgment.  The orders resolve Samaraneftegaz's basic objections concerning the scope and breadth of discovery, and do not touch on any substantive issues. Because the Discovery Orders merely define the scope of discovery, and are not contempt sanctions, they are not substantive.  *See Lothian Oil*, 526 F. App'x at 108 (holding that sanctions orders are "not ministerial or administrative post-judgment orders, but rather substantive post-judgment orders that resolved [defendant's] liability for failing to comply with [plaintiffs'] document and deposition subpoenas").  This is unlike the procedural posture of *EM Ltd.*, which involved the defendant's (Argentina) objection to a *third-party subpoena*.  In that case, the

49

Court held that "because the Discovery Order does not direct compliance from

Argentina itself, Argentina cannot obtain review through disobedience and

contempt." *EM Ltd.*, 695 F. 3d at 206.

This Court does not have pendent jurisdiction to review the Discovery

Orders because Samaraneftegaz's challenge to these orders does not involve the

"same specific question[s]" as its challenge to the Turnover Order and, therefore,

the issues are not "inextricably intertwined." *Lam Yeen Leng v. Pinnacle*

*Performance Ltd.*, 474 F. App'x 810, 814-15 (2d Cir. 2012).

## THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO COMPEL SAMARANEFTEGAZ'S COMPLIANCE WITH THE DISCOVERY REQUESTS

The Discovery Orders are reviewed for abuse of discretion. *EM Ltd.*, 695

F.3d at 207.

## I. Yukos Capital's Post-Judgment Discovery Requests Are Properly Tailored to Aid in Enforcement of the Judgment

Post-judgment discovery is governed by Federal Rule of Civil Procedure 69,

which provides that "[i]n aid of the judgment or execution, the judgment creditor

. . . may obtain discovery from any person—including the judgment debtor—as

provided in these rules or by the procedure of the state where the court is located."

Fed. R. Civ. P. 69(a)(2). The scope of discovery under Rule 69(a)(2) is

constrained principally in that it must be calculated to assist in collecting on a

judgment. *See id.;* Fed. R. Civ. P. 26(b)(1) (allowing a court to "order discovery of

any matter relevant to the subject matter involved in the action"); *First City, Texas-Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 54 & n.3 (2d Cir.2002). New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a similarly broad sweep. The CPLR provides that a "judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment." N.Y. C.P.L.R. § 5223; *see* David D. Siegel, *New York Practice* § 509 (5th ed. 2011) (describing Section 5223 as "a broad criterion authorizing investigation . . . of the judgment debtor's assets or their whereabouts"). As this Court recently reiterated, "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd.*, 695 F.3d at 207.

Pursuant to this well-settled law Yukos Capital requested documents and served interrogatories seeking basic information related to Samaraneftegaz's (1) bank accounts; (2) sale of oil; (3) dividends paid by Samaraneftegaz; (4) loans made or guaranteed by Samaraneftegaz; (5) potential claims brought by Samaraneftegaz; (6) assets of Samaraneftegaz expressed in foreign currency; (7) information Samaraneftegaz provided about its assets to external accountants, auditors, banks or other lenders; and (8) collateral received and other assets recorded in off-balance-sheet accounts. JA-619-21; JA-647-50. Samaraneftegaz initially refused to produce *any* documents in response to Yukos Capital's

51

Document Requests and its response to the Interrogatories was to declare that its assets were in Russia and therefore not subject to execution. JA-658-91; JA-693-755. Following good faith attempts to negotiate with Samaraneftegaz regarding the Discovery Requests, Yukos Capital moved to compel and the District Court properly granted the motion. Dkt. 162, 169, 198.

The documents and information Yukos Capital seeks are "clearly relevant and necessary in that they all pertain to [Samaraneftegaz's] assets and liabilities, which are determinative of whether [Yukos Capital] will be able to collect on [its] judgment and the proper recourse [it] must consider to do so." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 294 (E.D.N.Y. 2011). Samaraneftegaz's unilateral determination that the Discovery Requests exceed the scope of permissible discovery because they pertain to assets or transactions in Russia is contrary to the recent holding of the United States Supreme Court that a judgment creditor is not required to accept the "self-serving legal assertion" that the judgment debtor's assets are immune from execution. *NML Capital*, 134 S. Ct. at 2258.

Thus, the District Court correctly held that, "even if all [of Samaraneftegaz's] assets are in Russia, '[t]he fact that a judgment creditor may have difficulty reaching those assets is not determinative of relevance.'" SPA-16 (quoting *British Int'l Ins. Co.*, 2000 WL 713057, at *5). Samaraneftegaz's contention that it will be "impossible" for Yukos Capital to enforce the Judgment

52

against Russian assets (AOB 57) simply "does not affect discovery." *EM Ltd.*, 695 F.3d at 209 ("Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery. . . . [Plaintiff] need not satisfy the stringent requirements for attachment in order to simply receive information about Argentina's assets.").[13]

Second, the District Court properly found that Samaraneftegaz's position further assumes not only that Samaraneftegaz will continue to contemptuously refuse to honor the District Court's Turnover Order, but that other companies with whom Samaraneftegaz does business also are willing to disregard the District Court's orders. As the District Court properly concluded, the information that Yukos Capital has requested "may well be useful in enforcing the Judgment against Samaraneftegaz's assets that are held by third parties," and therefore Yukos Capital's Discovery Requests are "'calculated to assist in collecting on the judgment.'" SPA-16 (quoting *EM Ltd.*, 695 F.3d at 207).

---

[13] Samaraneftegaz's reference to the Supreme Court's holding in *NML Capital*, 134 S. Ct., is misleading. In that case, Argentina, as a judgment debtor, objected to the judgment creditor's discovery requests on the grounds that the requests sought information related to property against which the creditor might not ultimately be able to execute. *Id.* at 2257. Despite Samaraneftegaz's suggestion to the contrary (AOB 57-58), the Supreme Court rejected that argument because, as in this case, the judgment creditor "*does not yet know* what property [the judgment debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's law." *NML Capital*, 134 S. Ct. at 2257-58 (emphasis in original).

Yukos Capital is entitled to execute against Samaraneftegaz's assets through claims against third parties, including: (i) bringing claims against third-party garnishees holding property of Samaraneftegaz; (ii) making a claim against Samaraneftegaz and its fraudulent transferees to recover fraudulently transferred funds; and (iii) asserting claims against Samaraneftegaz's alter egos, Neft-Aktiv and Rosneft. *See Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 105 (2d Cir. 2001) (fraudulent conveyance claim is within the scope of the district court's enforcement jurisdiction); *Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 583 (S.D.N.Y. 2012) (finding that turnover motion was properly brought against non-party garnishee to satisfy judgment); *Telenor II*, 587 F. Supp. 2d at 618-21 (holding defendant's affiliates, as alter egos, in contempt for failure to comply with order confirming arbitral award). New York statutory procedures expressly permit such actions in aid of execution of a judgment. *See* N.Y. C.P.L.R. 5225(b) (authorizing action to satisfy judgment "against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor); N.Y. C.P.L.R. § 5227 (authorizing action to satisfy judgment "against any person who it is shown is or will become indebted to the judgment debtor").

Given that the District Court already found that the dividend payments made by Samaraneftegaz to Neft-Aktiv were fraudulent conveyances under New York law, Yukos Capital is entitled to discovery that might reveal additional fraudulent transfers made by Samaraneftegaz and other potential garnishees or fraudulent transferees. *See EM Ltd.*, 695 F.3d at 207 ("It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets.").  Whether or not these companies are located in Russia is not determinative.  Numerous Russian companies, including Samaraneftegaz's ultimate parent Rosneft, do business in the United States, as do non-Russian purchasers of Samaraneftegaz's oil.

Third, the District Court was not required to accept Samaraneftegaz's claim that it has no assets or business dealings outside the Russian Federation.  Yukos Capital submitted publicly available information to the District Court indicating that Samaraneftegaz sells its oil to Western companies, including BP and Shell International, and that such sales are effectuated through an intermediary known as RN-Trading, which owns Samaraneftegaz's parent Neft-Aktiv, and which, itself, is ultimately owned by Rosneft.  JA-1117-67.  Yukos Capital is entitled to discovery relating to such transactions—and any similar transactions—to pursue the funds that are ultimately paid to Samaraneftegaz for its oil.  Samaraneftegaz argues that "[i]nterrogatories are designed to create a *presumption* that a party's response

55

should be taken 'at its word.'" AOB 59 (emphasis added). Yukos Capital effectively rebutted any such presumption. Presented with the compelling information that Yukos Capital submitted regarding Samaraneftegaz's business transactions outside of Russia, the District Court rightfully found that Yukos Capital "need not take Samaraneftegaz at its word that all of its assets are in Russia" and "rather . . . is entitled to discovery regarding the location of those assets." SPA-16; *see NML Capital*, 134 S. Ct. at 2257-58.

Samaraneftegaz's argument that Yukos Capital's Discovery Requests are unduly burdensome is baseless, and the District Court properly rejected it.[14] SPA-16. The party resisting discovery bears the burden of showing why discovery should be denied. *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, No. 11 Civ. 1237 (AJN)(JCF), 2013 WL 466198, at *2 (S.D.N.Y. Feb. 7, 2013) (quotations and citation omitted).

---

[14] Samaraneftegaz also argues that Yukos Capital's requests are overly broad, duplicative, and posed for an improper purpose. AOB 59-61, 60 n.17. These arguments are without merit, and the District Court rightfully rejected them. SPA-16. Although Yukos Capital attempted to negotiate with Samaraneftegaz regarding the scope of discovery in an effort to avoid any asserted hardship on Samaraneftegaz, Samaraneftegaz ultimately took the position that it would not produce any documents relating to its assets on the grounds that such documents were irrelevant. Dkt. 162; Dkt. 170 at 5 n.1.

Samaraneftegaz offered only boilerplate objections in its discovery responses and did not submit *any* evidence showing that Yukos Capital's Discovery Requests impose an undue burden, as is required. *See Universitas Educ., LLC v. Nova Grp., LLC*, No. 11 Civ. 1590 (LTS) (HBP), 2013 WL 3328746, at *7 (S.D.N.Y. July 2, 2013) ("Notably, the [m]ovants have failed to provide any affidavits or to articulate the degree and scope of the burden posed by additional production.").

Samaraneftegaz failed to show that any alleged burden outweighs the "likely benefit" of discovery, namely, identifying Samaraneftegaz's assets in aid of execution. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, the discovery is essential in light of Samaraneftegaz's willful refusal to honor the District Court's orders. Any burden on Samaraneftegaz is of its own making, as it could simply post a bond.

The District Court rightfully rejected Samaraneftegaz's objections to Yukos Capital's Discovery Requests and held that these requests are "properly tailored" to "obtain[ing] what [Yukos Capital] is entitled to: $185,907.785.41." SPA-16. The District Court's order granting Yukos Capital's motion to compel should be affirmed.

## II.    The District Court Properly Awarded Attorneys' Fees

Rule 37(a)(5) provides that if a district court grants a Rule 37(a) motion to compel discovery, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, a court must not order payment if: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (3) "other circumstances make an award of expenses unjust." *Id.*; *see also Banco Cent. de Para. Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *10 (S.D.N.Y. Nov. 30, 2006) ("[T]he losing party on a motion to compel must pay reasonable expenses.") (quotations and citation omitted).

This Court's "review of the district court's order imposing Rule 37 sanctions is limited to the question whether the court abused its discretion," and the Court "must accept the [district] court's findings of facts underlying the sanctions unless clearly erroneous." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

The District Court properly concluded that the Rule 37 standard was met and that the "time expended and the rates charged for preparing the [Yukos Capital] motion to compel [were] reasonable." SPA-17-18. Yukos Capital attempted to negotiate with Samaraneftegaz regarding its Discovery Requests before filing its motion. Dkt. 162; Dkt. 170 at 5 n.1. In addition, Samaraneftegaz is unable to

show either that its reasons for refusing to produce the requested discovery were "substantially justified" or that any "other circumstances ma[de] an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). Rather, Samaraneftegaz has refused the discovery rightfully requested by Yukos Capital without justification. Unlike in *Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417 (S.D.N.Y. 2013), cited by Samaraneftegaz (AOB 62), where the responding party made targeted relevance objections, some of which the court upheld, Samaraneftegaz's blanket relevance objection relies on an "unreasonable, frivolous or completely unsupportable reading of the law," and the District Court properly rejected this objection in its entirety.[15]

The District Court was well within its discretion to award attorneys' fees under these circumstances. *See, e.g.*, *Cassese v. Williams*, 503 F. App'x 55, 59-60 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2023 (2013) (holding that "the determination of attorney's fees should not result in a second major litigation" and that "appellate courts must give substantial deference to [district court]

---

[15] Likewise, *Thai Lao Ignite (Thai.) Co. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW), 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011), is distinguishable. In that case, the defendant objected to producing discovery related to assets that it claimed were immune pursuant to the Foreign Sovereign Immunities Act ("FSIA"). *Id.* at *9. The court, which ultimately ordered that the defendant produce the requested discovery, denied the moving party's request for attorneys' fees and costs only because "[t]he law governing FSIA-related discovery is not clearly defined and is susceptible to genuine dispute." *Id.* No FSIA issues exist here.

determinations, in light of the district court's superior understanding of the litigation").  Accordingly, the District Court's order that Samaraneftegaz pay $78,673.00 in attorneys' fees was warranted and should be upheld.[16]  SPA-18.

## CONCLUSION

For the foregoing reasons, Petitioner-Appellee respectfully requests that this Court affirm each of the orders of the District Court.


Dated:  New York, New York
        October 10, 2014

                    GIBSON, DUNN & CRUTCHER LLP


                    By:  /s/ Robert L. Weigel
                        Robert L. Weigel
                        Anne M. Coyle


                    200 Park Avenue
                    New York, NY  10166-0193
                    Telephone:  212.351.4000
                    Facsimile:   212.351.4035

                    *Attorneys for Petitioner-Appellee*
                    *Yukos Capital S.a.r.l.*

---

[16]  Samaraneftegaz does not challenge the District Court's determination that "the time expended and the rates charged for preparing the motion to compel are reasonable."  SPA-18.

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with Federal Rule of Appellate Procedure

32(a)(7)(B) because it contains 13,978 words, as determined by the word-count

function of Microsoft Word 2010, excluding the parts of the brief exempted by

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.

*/s/ Robert L. Weigel*
Robert L. Weigel

61