# 14-554-cv

## United States Court of Appeals

for the

## Second Circuit

⫸⫷

YUKOS CAPITAL S.A.R.L.,

*Petitioner-Appellee,*

— v. —

OAO SAMARANEFTEGAZ,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF OF RESPONDENT-APPELLANT OAO SAMARANEFTEGAZ

Matthew D. Slater
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
202-974-1500

Attorneys for Respondent-Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ....................................................................................... 3

I.   THE DISTRICT COURT WRONGLY REQUIRED SAMARANEFTEGAZ TO TURN OVER RUSSIAN ASSETS IN SATISFACTION OF THE JUDGMENT ................................................................................... 3

    A.   A Comity Analysis Was Required ....................................... 4

    B.   The Turnover Order Offends Comity ................................. 16

    C.   The Turnover Order Violates New York Law ................... 19

II.  THE DISTRICT COURT ERRED IN ISSUING AN INJUNCTION TO SUPPORT THE TURNOVER ORDER .................................................... 20

III. THE DISTRICT COURT ERRED IN ORDERING FURTHER DISCOVERY RESPONSES AND AWARDING ATTORNEY'S FEES .. 24

    A.   This Court Has Jurisdiction Over Samaraneftegaz's Appeal Of The Discovery Orders ......................................................... 24

    B.   The Requested Information Is Outside The Scope Of Proper Post-Judgment Discovery ................................................... 25

    C.   The District Court Erred In Awarding Attorney's Fees .................... 29

CONCLUSION ................................................................................... 30

CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(C) .......................... 31

# TABLE OF AUTHORITIES

**Cases**

Centennial Archaeology, Inc. v. AECOM, Inc.,
    688 F.3d 673 (10th Cir. 2012) ............................................................................25

Derr v. Swarek,
    766 F.3d 430 (5th Cir. 2014) ..............................................................................16

EM Ltd. v. Republic of Argentina,
    695 F.3d 201 (2d Cir. 2012) ........................................................................ 25-26

Farmar v. Arabian Am. Oil Co.,
    379 U.S. 227 (1964).............................................................................................25

Farmer v. Arabian Am. Oil Co.,
    324 F.2d 359 (2d Cir. 1963) ...............................................................................25

FCS Advisors, Inc. v. Fair Finance Co.,
    605 F.3d 144 (2d Cir. 2010) .................................................................................9

Gucci Am., Inc. v. Bank of China,
    Nos. 11-3934-cv, 12-4557-cv, 2014 WL 4629049 (2d Cir. Sept.
    17, 2014) .......................................................................................... 1, 4-5, 15

In re Mbakpuo,
    52 F.3d 321, 1995 WL 224050 (4th Cir. 1995)..................................................25

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas
    Bumi Negara,
    500 F.3d 111 (2d Cir. 2007) ...............................................................................10

Khodorkovskiy and Lebedev v. Russia, Judgment, Appl. No.
    11082/06, Eur. Ct. H.R. (July 25, 2013).............................................................13

Lamar Adver. of Penn, LLC v. Town of Orchard Park,
    356 F.3d 365 (2d Cir. 2004) ...............................................................................24

Linde v. Arab Bank, PLC,
    706 F.3d 92 (2d Cir. 2013) .........................................................................18, 22

Lothian Oil (USA) Inc. v. Sokol,
    526 F. App'x. 105 (2d Cir. 2013) ........................................................25

Motorola Credit Corp. v. Standard Chartered Bank,
    No. 162, 2014 WL 5368774 (N.Y. Oct. 23, 2014)................................5

Motorola Credit Corp. v. Uzan,
    388 F.3d 39 (2d Cir. 2004) ...............................................................14

N.Y. v. Shore Realty Corp.,
    763 F.2d 49 (2d Cir. 1985) ...............................................................24

NML Capital, Ltd. v. Republic of Argentina,
    699 F.3d 246 (2d Cir. 2012) ..............................................................21

NML Capital, Ltd. v. Republic of Argentina,
    727 F.3d 230 (2d Cir. 2013) ..............................................................22

OAO Neftyanaya Kompaniya Yukos v. Russia, Judgment, Appl. No.
    14902/04, Eur. Ct. H.R. (Mar. 8, 2012)............................................13

Ohntrup v. Makina Ve Kimya Endustrisi Kurumu,
    760 F.3d 290 (3d Cir. 2014) ..............................................................27

RCA Corp. v. Tucker,
    696 F. Supp. 845 (E.D.N.Y. 1988) ....................................................23

Republic of Argentina v. NML Capital Ltd.,
    134 S. Ct. 2250 (2014)................................................................. 25-27

Stolt-Nielsen SA v. Celanese AG,
    430 F.3d 567 (2d Cir. 2005) ..............................................................24

Swarna v. Al-Awadi,
    622 F.3d 123 (2d Cir. 2010) ......................................................... 24-25

Telenor Mobile Commc'ns AS v. Storm LLC,
    584 F.3d 396 (2d Cir. 2009) ..............................................................14

Transaero, Inc. v. La Fuerza Aerea Boliviana,
    162 F.3d 724 (2d Cir. 1998) ................................................................3

Trust v. Kummerfeld,
   153 F. App'x 761 (2d Cir. 2005) ........................................................20

United States v. Harrell,
   268 F.3d 141 (2d Cir. 2001) .................................................................4

**Statutes**

28 U.S.C. § 1292 .........................................................................................24

Russia and Moldova Jackson-Vanik Repeal and Sergei Magnitsky
   Rule of Law Accountability Act of 2012, Pub. L. 112-208 §
   202(a)(1)(B), 126 Stat. 1497 (Dec. 14, 2012) ...................................17

**Rules**

Fed. R. Civ. P. 44.1 .....................................................................................4

Fed. R. Civ. P. 65 ......................................................................................20

N.Y. C.P.L.R. § 308(5) ..............................................................................20

N.Y. C.P.L.R. § 5222 .................................................................................23

N.Y. C.P.L.R. § 5225(a) ............................................................................19

S.D.N.Y. Local Civil Rule 12.1 ..................................................................4

**Other Authorities**

Restatement (Second) of the Foreign Relations Law of the United
   States § 40 ............................................................................................5

Restatement (Third) of the Foreign Relations Law of the United States
   § 403...............................................................................................5, 18

U.S. Trade Representative, Report on WTO Enforcement Actions:
   Russia (June 2014) .............................................................................17

**PRELIMINARY STATEMENT**

Yukos Capital's Opposition Brief ("Opp'n") reads as if the beginning and end of the required analysis is that "black letter New York law" permits turnover orders directed to "assets from outside the jurisdiction." Opp'n 3. But that is not the law when the turnover order would require conduct that is prohibited in the foreign jurisdiction where the property is located. In those circumstances, a comity analysis is required first, "given the important role that comity plays in ensuring the 'recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" Gucci Am., Inc. v. Bank of China, Nos. 11-3934-cv, 12-4557-cv, 2014 WL 4629049, at *14 (2d Cir. Sept. 17, 2014) (citation omitted). Gucci is this Court's most recent pronouncement on comity, the central issue in this appeal; inexplicably, Yukos Capital does not acknowledge its existence.

A comity analysis is required here. The purpose and effect of the Turnover Order is to require Samaraneftegaz to transfer assets from Russia to satisfy the Award, which the Russian courts have held is unenforceable in Russia and payment of which would amount to money laundering under Russian law. In these circumstances, Russia has a far stronger interest in governing the conduct of its nationals with respect to the disposition of Russian property than the United States has with respect to this dispute between Russian and Luxembourgian

1

parties. Indeed, the Russian courts recently reaffirmed that Samaraneftegaz and its personnel would breach obligations under Russian judgments if they take steps to comply with the Turnover and Discovery Orders in Russia.

The Turnover Order thus fails the required comity analysis. The District Court's substitution of its view of the enforceability of the Award in Russia for that of the Russian courts, despite the country-by-country approach of the New York Convention, and its placing Samaraneftegaz's personnel at risk of criminal prosecution in Russia, cannot be sustained. Nor can the Turnover Order's injunction stand, as there is no risk of irreparable injury, only non-payment of a money judgment. In any event, the Turnover Order does not satisfy the C.P.L.R.'s specificity or jurisdictional service requirements.

The Discovery Orders are equally infirm. The discovery concerns assets that are not subject to execution – requests labelled "bizarre," "irrelevant," and "unenforceable" in the Supreme Court's most recent pronouncement on the subject. And because Samaraneftegaz's objections were substantially justified, the fee award was improper.

Yukos Capital's perceived procedural impediments are make-weights. Samaraneftegaz did not waive its comity defense to the Turnover Order, but raised it at the first opportunity. And because the Discovery Orders substantially overlap

2

with appealable injunctive and fee orders, they fall within the Court's pendent jurisdiction.

The Turnover and Discovery Orders should therefore be reversed and the fee award vacated.

## ARGUMENT

### POINT ONE

### THE DISTRICT COURT WRONGLY REQUIRED SAMARANEFTEGAZ TO TURN OVER RUSSIAN ASSETS IN SATISFACTION OF THE JUDGMENT

The District Court's refusal to conduct a comity analysis stemmed from an erroneous legal premise and a clearly erroneous view of the facts. For both reasons, the Turnover Order must be reversed. See Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.") (quoting Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990)). Yukos Capital's argument that Samaraneftegaz waived its comity defense or that it "was improperly placed before the District Court" is specious. Opp'n 19-20. The District Court recognized that "Samaraneftegaz's Objections" included that "[a] turnover order would offend principles of comity because it would expose Samaraneftegaz's officers to criminal liability." SPA-8. This was Samaraneftegaz's first argument in its first paper

3

opposing Yukos Capital's turnover motion.  ECF No. 154 at 6-14.[1]  Moreover,

"given the important role [of] comity," there can have been no forfeiture even if

Samaraneftegaz had not raised the issue until later in the proceedings.  <u>Gucci</u>, 2014

WL 4629049, at *14.[2]

## A.    A Comity Analysis Was Required

This Court's controlling precedent requires a comity analysis

whenever foreign law would prescribe different conduct than that proposed to be

prescribed by a U.S. court.  <u>Gucci</u>, 2014 WL 4629049, at *13.  Samaraneftegaz

made a strong showing of the conflict between the Turnover Order and obligations

affirmed by Russian courts under Russian law.  In these circumstances, the District

Court's erroneous conclusion that "a comity analysis is unnecessary," SPA-14,

must be reversed.

<u>Gucci</u> confirmed that where a party objects to the issuance of an order

"specifically citing an <u>apparent conflict</u> with the requirements of [foreign] law,

comity principles <u>require</u>[] the district court to consider the [party's] legal

---

[1]    "ECF" means the District Court's docket.

[2]    <u>Cf.</u> <u>United States v. Harrell</u>, 268 F.3d 141, 146-47 (2d Cir. 2001) (no waiver even where appellant "failed to cite the specific cases upon which it principally relies in this appeal until its motion for reconsideration").  Contrary to Yukos Capital's argument, Opp'n 32, Samaraneftegaz's expert opinions were properly filed.  The District Court's Local Rules about "affidavits" do not concern expert opinions on foreign law, <u>see</u> S.D.N.Y. Local Civil Rule 12.1, and "in determining foreign law, the court may consider any relevant material or source,"  Fed. R. Civ. P. 44.1.

4

obligations pursuant to foreign law before compelling it to comply." 2014 WL 4629049, at *13 (emphases added). <u>Gucci</u> follows long-standing authority that requires a comity analysis before allowing an order impacting foreign conduct simultaneously subject to foreign law. <u>See</u> Appellant's Br. 24-26. <u>See also</u> <u>Motorola Credit Corp. v. Standard Chartered Bank</u>, No. 162, 2014 WL 5368774 (N.Y. Oct. 23, 2014) (comity principles bear on application of C.P.L.R. Art. 52).

     <u>Gucci</u> referred to "the framework provided by § 403 of the Restatement (Third) of Foreign Relations Law," 2014 WL 4629049, at *14, while this Court's prior jurisprudence referred to the broadly similar framework under § 40 of the Second Restatement, <u>see</u> Appellant's Br. 37. The predicate for requiring a comity analysis under § 403 is the potential to "prescribe law with respect to a person or activity having connections with another state." Under § 40 the predicate is that another state may "prescribe and enforce rules of law and . . . require inconsistent conduct" of someone subject to the U.S. court's order. Those predicates are met here.

     First, the Turnover Order prescribes conduct in Russia. Yukos Capital asks the Court to deny reality by insisting that "compliance need not take place in the Russian Federation," Opp'n 36, but the District Court was under no such illusion. The Turnover Order rests on the District Court's findings that "Samaraneftegaz does not have assets or do business within the United States,"

5

SPA-2, and "Samaraneftegaz possesses no U.S. assets," SPA-4. The Turnover Order by its terms is directed to "out-of-state assets," id., and necessarily to the conduct of Samaraneftegaz's employees in Russia.[3] The notion that this is about enforcement in New York cannot be taken seriously.

Second, as Yukos Capital concedes, Opp'n 22-32, Russian courts in two separate proceedings in which Yukos Capital fully participated (one of which it initiated) have issued judgments that concern the dispute between these parties and prescribe law in respect of their conduct. See Appellant's Br. 26-33. Yukos Capital does not dispute that those court decisions have binding effect within Russia.

Third, as Samaraneftegaz demonstrated through legal opinions from two different experts, Russian courts would treat actions to facilitate compliance with the Turnover Order as violating those courts' judgments, which in turn would expose Samaraneftegaz's officers and employees to criminal sanctions in Russia. Appellant's Br. 14-15, 16-18.[4]

While there is therefore no legitimate basis to contest the need for a comity analysis or to dispute that the Turnover Order conflicts with Russian law,

---

[3]     Samaraneftegaz demonstrated through sworn evidence that all of its assets are in Russia. JA-285-288, 1178-81; see also infra n.20.

[4]     The same applies to Samaraneftegaz's posting a bond. Appellant's Br. 51-52.

any question in that regard has been definitively put to rest by Russian authorities in recent decisions whose existence Yukos Capital acknowledges, but whose significance it studiously ignores. Opp'n 15 n.4.[5] See also Appellant's Br. 12 n.4. Those decisions – which do not reflect a change in Russian law but rather the straightforward implications of the earlier Russian court decisions – are relevant to this Court's *de novo* review of the District Court's legal conclusions concerning Russian law and confirm that the District Court plainly erred.

First, on July 25, 2014, the Samara Regional Court issued a clarification of its 2011 judgment in Yukos Capital's Russian Enforcement Action. ECF No. 215-1 ("Samara Ruling").[6] The Samara Ruling demonstrates that the District Court was wrong to conclude that Samaraneftegaz can comply with the Turnover Order without violating Russian law:

> Requesting the compliance with its turnover and disclosure orders, the US District Court for the Southern District of New York compels the Russian law entity, OJSC Samaraneftegaz, to act in contravention of the public policy of the Russian Federation and the judicial acts of the Russian courts which are binding on it. Thereby, in violation of the sovereign rights of the

---

[5]     In addition to being docketed in appeal number 13-3357-cv as cited by Yukos Capital, the decisions are available on the District Court's docket at ECF Nos. 214-1, 215-1, 215-2.

[6]     Samaraneftegaz duly served its request for a clarification on Yukos Capital. Yukos Capital had an opportunity to appeal the Samara Ruling, Samara Ruling at 8, but did not do so.

> Russian Federation, the turnover and disclosure orders
> constitute intervention in matters referred by
> international law to the competence of that sovereign
> state with which the person and the territory in respect of
> which such actions have been taken, that is in this case,
> the Russian Federation, are most closely connected.

Samara Ruling at 7 (emphases added). The Samara Ruling is now final and

represents the definitive view of the Russian judicial branch on the matter. The

District Court's misconception that Russian law might apply differently, or that the

conflict concerns only "a few lines in a civil opinion," SPA-14, is wrong and in

any case irrelevant to the need for a proper comity analysis.

Second, in response to a request from the Samara Court, the Russian

Foreign Ministry provided its opinion on the international-law implications of the

orders at issue here. ECF No. 215-2 ("Ministry Letter"). Its view of the legal

issues was in accord with the Samara Ruling, which relied in part on the Foreign

Ministry's analysis:

> [W]e think that the abovementioned decisions of the US
> courts relating to activities of Russian legal entities in the
> territory of the Russian Federation are of 'extraterritorial'
> nature, constitute interference with the exercise of
> sovereign prerogatives by the Russian Federation, and
> therefore contradict the generally recognized rules and
> principles of international law.

Ministry Letter at 3 (emphasis added).

Third, in response to a request from Samaraneftegaz, the General

Prosecutor's Office of the Russian Federation also issued an advisory letter on the

potential implications under Russian criminal law for any employee who caused Samaraneftegaz's assets to be used to facilitate payment of a judgment that is at odds with the Russian courts' judgments. ECF No. 214-1 ("Prosecutor's Letter").[7] Consistent with Samaraneftegaz's expert evidence before the District Court, the letter states that such activity would expose its employees to criminal liability, specifically concluding: "If an employee of OJSC Samaraneftegaz proceeds with the performance of the foreign courts' judicial acts that are contrary to the decisions issued by Russian courts, a question will arise as to criminal liability of such employee" under various Russian criminal statutes. Prosecutor's Letter at 1.

In light of these unequivocal statements of Russian law, Yukos Capital's persistent reliance on the notion that the District Court's Judgment would insulate Samaraneftegaz and its personnel within Russia or that the Russian courts and law enforcement would treat the Judgment as wholly separate from the underlying Loan Agreements and Award must fail. Opp'n 21-23, 30-31. That fanciful view of Russian law proposed by Yukos Capital's house expert is not supported by any statute, rule, or jurisprudence that could countermand these Russian decisions. Appellant's Br. 34.[8]

---

[7]    Samaraneftegaz also sent Yukos Capital a copy of its request. Yukos Capital submitted no comments to the General Prosecutor's Office.

[8]    This is not changed by Yukos Capital's cite to FCS Advisors, Inc. v. Fair Finance Co., 605 F.3d 144, 148 (2d Cir. 2010), Opp'n 27, which has nothing to do

A similar flaw infects Yukos Capital's arguments about the New York Convention. Yukos Capital's acknowledgment that each Convention State may determine recognition and enforcement in its own territory, Opp'n 24-25, is fatal to its argument that a U.S. court has *carte blanche* to force execution of a foreign arbitral award in other jurisdictions, id. 25-26. This is not a case in which the Russian courts have sought to prevent entry of a binding judgment in the U.S. or sought to vitiate the judgment by enjoining its enforcement on penalty of a counter-judgment requiring repayment. Cf. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 117 (2d Cir. 2007). Rather, this is a case where the District Court seeks *de facto* to dictate that the Award must be enforced against assets in Russia, cf. id. at 126, while the Russian courts have held that this Award may not be enforced there. Yukos Capital's contrary arguments overlook or assume away these critical facts. Nothing in the New York Convention gives U.S. courts the exceptional ability to act extraterritorially to force a foreign party on foreign soil to violate the laws of its foreign home. It is thus not surprising that Yukos Capital cites no decision in which any court in the world has dictated that a New York Convention award be

---

with whether a Russian court would consider an unrecognized foreign judgment to have merged with the underlying legal obligation.

satisfied from assets located in a second State whose courts had denied recognition and enforcement of the same award.

Yukos Capital's observation that the Russian court in the Russian Enforcement Decision did not "enjoin Samaraneftegaz from satisfying a valid judgment of a New York court," Opp'n 23, misses the point. The legal constraints on Samaraneftegaz and its personnel in Russia arise from the operation of generally applicable Russian law concerning the effects of final Russian judgments. By compelling Samaraneftegaz to take actions in Russia that the Russian courts have held contravene Russian public policy and have no legal basis, the Turnover Order conflicts with the Russian Enforcement Decision, with consequences under Russian law, regardless of any lack of an injunction, as the Samara Court confirmed. Samara Ruling at 7; see also Appellant's Br. 26-27.

Nor is there any merit to Yukos Capital's argument that the decisions in the Neft-Aktiv litigation do not conflict with the Turnover Order. The decision of the Eleventh Arbitrazh Court of Appeals, which Yukos Capital cites, Opp'n 27, describes some of the findings in that case:

> [T]he trial court concluded that the contested transactions covered up the result of a crime. This does not exclude the circumstance that the mechanism of transfers of funds from Yukos Capital in favor of OJSC Samaraneftegaz was nothing but a sham transaction . . . . The monetary funds owned by OJSC Samaraneftegaz (and illegally taken away) were returned to it on a repayable and compensatory basis which is the evidence that the

11

> transactions for the performance of such transfer were
> executed to the detriment of the company.

JA-112. Because the loans were shams to hide that the funds belonged to

Samaraneftegaz all along, the court further held that there was no lawful basis to

require repayment, which would, in any case, offend public policy because the

sham Loan Agreements were part of a criminal money-laundering and tax evasion

scheme. JA-83-85.[9]

  As explained in our opening brief at 14-18, 30-32, because of these

rulings, Samaraneftegaz's employees could be charged criminally with money

laundering or misappropriation if they facilitate payment to Yukos Capital. Yukos

Capital's protest that <u>it</u> "has never been charged with, let alone convicted of, tax

evasion or money laundering," Opp'n 30, is irrelevant and misleading. Beyond the

fact that the issue is the criminal risk to <u>Samaraneftegaz's</u> personnel, not to Yukos

Capital, Yukos Capital faces no criminal risk because Russian law does not

provide for corporate criminal liability. JA-1208. Moreover, the Neft-Aktiv courts

relied on their findings concerning Yukos Capital's involvement in the criminal

---

[9]  The Neft-Aktiv courts did not presume the Award's validity or significance. To the contrary, those decisions recognized that the Russian Enforcement Decision "dismissed the motion of Yukos Capital S.a.r.l. for [the Award's] recognition and enforcement" in an order that "Yukos Capital S.a.r.l. did not challenge," JA-109, and therefore the Award was already unenforceable in Russia, JA-110. Yukos Capital's recitation that the Award "was not revised" in the Neft-Aktiv proceedings, Opp'n 27, is therefore irrelevant.

money-laundering scheme, e.g., JA-83, which Yukos Capital presented no evidence in Russia or here to rebut.

Yukos Capital also stretches the bounds of candor through its assertion that the judgments of the European Court of Human Rights ("ECHR") "bely[] Samaraneftegaz's claims of tax fraud." Opp'n 33. To the contrary, in its ruling on the merits in Yukos Oil's case, with which Yukos Capital is in privity, the ECHR specifically confirmed that Yukos Oil's "tax arrangements were unlawful," ECF No. 107-5, 114, ¶ 594, and that Yukos Oil's tax debt "resulted from legitimate actions by the [Russian] Government to counter the company's tax evasion," id., 133-134, ¶ 664.[10]

Yukos Capital's effort to depict the Neft-Aktiv litigation as "collusive" akin to the Telenor and Uzan cases is unfounded and disingenuous. Opp'n 29, 24-35. The truly collusive and fraudulent conduct consists of the manipulations undertaken by Yukos Oil and Yukos Capital to foist upon Samaraneftegaz amendments to displace its Russian-seated, Russian-law

---

[10] The ECHR likewise recognized Mr. Khodorkovsky's tax-evasion conviction as being validly founded on violations of Russian criminal law. See Khodorkovskiy and Lebedev v. Russia, Judgment ¶¶ 778-821, Appl. No. 11082/06, Eur. Ct. H.R. (July 25, 2013), http://hudoc.echr.coe.int/sites/eng/pages/search.aspx?i=001-122697. Those findings are not displaced by the other ECHR judgment to which Yukos Capital refers, which is not final, or by the Hulley Enterprises arbitration award. Opp'n 33. Neither Yukos Capital nor Samaraneftegaz was a party to the latter proceeding, which remains susceptible to annulment.

arbitration agreement solely to benefit Yukos Capital, and the subsequent arbitration where Samaraneftegaz was not even given notice of critical procedural steps. Appellant's Br. 9; Appellant's Br. 12-15, Yukos Capital S.a.r.l. v. OAO Samaraneftegaz, No. 13-3357-cv (2d Cir. Jan. 24, 2014). By contrast, Yukos Capital received appropriate notice of and participated fully in the Neft-Aktiv proceedings, including through three levels of appellate review. Appellant's Br. 10. Moreover, the District Court was kept fully apprised of the Neft-Aktiv proceedings, which began some three years before this case, as soon as Neft-Aktiv gained standing to challenge the illegal obligations imposed on Samaraneftegaz. SPA-2; JA-79, 107-108, 127. The Neft-Aktiv proceeding is thus far removed from the extraordinary circumstances in which this Court declined to give weight to "collusive" foreign litigation. Cf. Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 410 (2d Cir. 2009) (party denied "rudimentary due process" and "continually denied notice of the proceedings"); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 60 (2d Cir. 2004) (foreign proceeding begun by a party with "no apparent motive" just before a decision in ongoing U.S. litigation and "conceal[ed] . . . from the District Court and the Court of Appeals"); Appellant's Br. 27-28.

Finally, Yukos Capital's characterization of Samaraneftegaz's concern that compliance with the Turnover Order would be criminal as "purely speculative," Opp'n 31, is wrong. The substance of Samaraneftegaz's evidence

regarding the risk of criminal sanction to its employees, Appellant's Br. 16-18, 30-32, goes effectively unrefuted by Yukos Capital here as it was before the District Court. See Opp'n 32-33. And there can be little doubt of the probability of prosecution in light of the Prosecutor's Letter.[11] Samaraneftegaz's employees should not be required to violate the law in Russia merely because Yukos Capital speculates that they might not be prosecuted for doing so.[12]

The Court should not be misled in this regard, as was the District Court, that Samaraneftegaz seeks to "recycle" an argument that recognition of the Award should be declined in the United States based on the Russian findings of tax fraud, Opp'n 32, nor does Samaraneftegaz seek "enforcement of foreign tax laws," id. 33. The question presented instead concerns the impact of the Russian

---

[11]   The Prosecutor's Letter is analogous to the "Regulators' Letter" that was a partial basis for this Court's instruction to the district court in Gucci that a conflict with foreign law was apparent and a comity analysis was required. 2014 WL 4629049, at *13-14. The "Regulators' Letter" did not state with certainty that anyone would go to jail, but like the Prosecutor's Letter, it identified the Chinese laws at issue and stated that violations of those laws would be pursued even if committed under a New York court order. See Regulator's Letter, Gucci Am. v. Li, No. 1:10-cv-04974-RJS (S.D.N.Y. Nov. 30, 2011), ECF No. 91-9.

[12]   Yukos Capital's reference to a 2010 payment by a third party (Rosneft) to Yukos Capital, Opp'n 31, is another deception. At the time of the 2010 Rosneft payment, there was no finding that the loans at issue were part of a criminal scheme, a finding that was entered two years later. JA-367-83; JA-769. Furthermore, Yukos Capital must acknowledge that Rosneft's payment was made pursuant to a bank guarantee that replaced the English court's attachment order concerning assets in England, not Russia. Opp'n 37; JA-768-69.

judgments in Russia on the ability of Samaraneftegaz and its personnel to comply with the Turnover Order.  That is an issue with which the District Court never engaged, Appellant's Br. 12, 14-15, 25-26, and for which a comity analysis is required.

**B.      The Turnover Order Offends Comity**

Yukos Capital does not dispute the factors to weigh in a comity analysis, Opp'n 35-36, though its application of those factors is wrong, largely because it ignores the facts of this case.

First, on balancing-of-sovereign-interests, the Russian Federation has a stronger interest than the United States in whether to enforce arbitral awards within Russia, which is what is at issue here, and which coincides with the United States' interest in preserving the reciprocal rights of each State under the New York Convention to decide enforcement within its borders for itself.  See Appellant's Br. 38-42.  Indeed, but for the New York Convention, the Russian Enforcement Decision would be *res judicata* here against the unsuccessful plaintiff, Yukos Capital.  Similarly, as the Samara Ruling, the Ministry Letter, and the Prosecutor's Letter attest, Russia has a stronger interest in the enforcement of its own judgments within its territory; not only has recognition for the District Court's Judgment not been sought in Russia, but for reasons discussed previously, it could not be granted.  See Appellant's Br. 34-36.  Cf. Derr v. Swarek, 766 F.3d

430, 442-444 (5th Cir. 2014) (declining to give effect to German judgment that breached Mississippi public policy). Yukos Capital gains nothing from the platitudes it espouses or its reference to the Telenor and Karaha cases, Opp'n 35, none of which endorse forcing execution of a U.S. money judgment in a foreign State in contravention of that State's law, including a foreign court judgment that preceded the U.S. judgment in a case initiated by the plaintiff in the U.S. litigation.

The Magnitsky Act likewise does not support Yukos Capital or its mission here. The misleadingly quoted passage, Opp'n 35, requires reports to Congress on measures taken by the Administration concerning "promoting the claims of United States investors in Yukos Oil Company." Pub. L. 112-208 § 202(a)(1)(B), 126 Stat. 1497 (Dec. 14, 2012).[13] Yukos Capital, of course, is not a "United States investor in Yukos Oil Company," nor may it cloak itself in their interests; in a sworn affidavit, one of its directors attests that any recovery will go to its non-U.S. corporate affiliates, not to U.S. shareholders of Yukos Oil. JA-305.

Second, this is not the exceptional case that justifies compelling a foreign national to violate its home country's laws. See Appellant's Br. 43. As discussed above, the Turnover Order is intended to direct the conduct of

---

[13]    See also U.S. Trade Representative, Report on WTO Enforcement Actions: Russia (June 2014), n.1, http://www.ustr.gov/sites/default/files/06182014-2014-Russia-Enforcement-Report-FINAL.pdf (the statute requires "a report . . . that discloses the status of any pending petition for espousal filed with the Secretary of State by a U.S. investor in Russia").

Samaraneftegaz's personnel, all of whom are in Russia, where they would be put at risk of prosecution if they were to comply with it.

Finally, Yukos Capital's argument that compliance with the Turnover Order could be achieved through contempt sanctions, Opp'n 37, ignores that the individuals who are susceptible to criminal sanction in Russia are not susceptible to a U.S. court's contempt sanctions. Appellant's Br. 17-18. It also ignores that a separate comity analysis would be required before imposing such sanctions. See, e.g., Linde v. Arab Bank, PLC, 706 F.3d 92, 109-112 (2d Cir. 2013).

The District Court's refusal to consider the implications in Russia of its orders stands in stark contrast to the Samara Ruling. The Samara Court considered essentially the same factors this Court has held inform a proper comity analysis, including: the conduct's link to "the territory of the Russian Federation," the hardship to Samaraneftegaz's employees from the fact that non-compliance with Russian courts' decisions in Russia "entails liability," the international-law implications of the District Court's orders, and the respective rights and sovereign interests of the United States and the Russian Federation. Samara Ruling 5-8. A similarly thorough analysis by the District Court would have led it to refuse the Turnover Order, and should lead this Court to that result now. As Section 403 of the Third Restatement makes clear, having "evaluate[d] its own as well as the other

state's interest in exercising jurisdiction, . . . a state should defer to the other state

if that state's interest is clearly greater," as Russia's is here.

**C.      The Turnover Order Violates New York Law**

None of Yukos Capital's arguments salvage its or the District Court's

failure to comply with the New York statutory requirements for a turnover order.

First, Yukos Capital does not refute that New York law requires, but the Turnover

Order lacks, specification of the assets to be turned over.  Yukos Capital asserts

that it "identified bank accounts" to the District Court, Opp'n 37, but neither its

turnover briefs, ECF Nos. 149, 158, nor its motion, ECF No. 148, did so.  In any

event, the Turnover Order itself, SPA-11-12, is devoid of specificity, and thus does

not satisfy the statute.  See Appellant's Br. 45-47.

Second, Yukos Capital does not dispute that C.P.L.R. § 5225(a)

requires service by specified means (registered or certified mail or in the C.P.L.R.-

specified manner for service of a summons), that it failed to serve Samaraneftegaz

by either means, and that New York courts hold that service as required by that

provision is a "jurisdictional" prerequisite to entry of a Turnover Order.  Compare

Appellant's Br. 47 with Opp'n 39-42.  That other court papers may be served by

other means is irrelevant to the requirements of Section 5225.  It is likewise

irrelevant that in 2010 the District Court ordered "alternative service of Yukos

Capital's Petition," Opp'n 39, which in any case Yukos Capital did not follow with

its turnover application. Yukos Capital's reliance on <u>Trust v. Kummerfeld</u>, 153 F. App'x 761, 762-763 (2d Cir. 2005), Opp'n 40, is misplaced because the court there ordered service by certified mail – the precise form of service required by Section 5225.[14] Because Yukos Capital failed to serve as required by Section 5225, the District Court lacked jurisdiction to enter the Turnover Order.

**POINT TWO**

**THE DISTRICT COURT ERRED IN ISSUING AN INJUNCTION TO SUPPORT THE TURNOVER ORDER**

The District Court improperly enjoined Samaraneftegaz's dealings with affiliates and disposition of assets in Russia. It failed to make the required findings to sustain an injunction under Fed. R. Civ. P. 65 or under New York law. Yukos Capital's arguments underscore these failings.

First, Samaraneftegaz demonstrated that Yukos Capital has not shown any risk of irreparable injury, a *sine qua non* for injunctive relief. Appellant's Br. 48-50. Samaraneftegaz's payments to affiliates were lawful, but in any event had no bearing on Yukos Capital's ability to execute. Yukos Capital's inability to

---

[14]    Yukos Capital's other alternative-service cases, Opp'n 40-41, are inapposite because they do not concern Section 5225, none retroactively approved prior self-help attempts, and each made specific findings supporting alternative service. Yukos Capital is not helped by its invocation of C.P.L.R. § 308(5), Opp'n n.11, which allows alternative service only "upon motion" and <u>after</u> the court finds that statutory service is "impracticable." Yukos Capital made no such motion and could not show that service as required by Section 5225 – including registered or certified mail – is impracticable.

execute its Judgment stems from the fact that all of Samaraneftegaz's assets and operations are in Russia, where Yukos Capital concedes the Judgment is not enforceable.  Samaraneftegaz never had assets in New York and has not transferred assets to frustrate execution.  Yukos Capital's claim that Samaraneftegaz "might" act to frustrate enforcement of the Judgment is not supported by evidence and amounts to nothing more than a complaint about failure to pay.

Yukos Capital mistakenly seeks to rely on the injunctions in the Argentine bond cases to try to show irreparable injury, Opp'n 45-47, but the factors on which the courts relied in those cases have nothing to do with the facts in this case.  For example, this case does not involve a contractual obligation not to pay third parties or alter the rank among creditors, which was central to the injunction in those cases,[15] and it does not involve a sovereign's purported exercise of legislative powers to block recourse to judicial remedies[16] or to prohibit

---

[15]    See NML Capital, Ltd. v. Republic of Argentina, 699 F.3d 246, 261 (2d Cir. 2012) ("NML I") (the injunctions "require[] that [Argentina] specifically perform its obligations") (emphasis added); id. at 262 ("In this context, the district court properly ordered specific performance.") (emphasis added); id. ("[The injunctions] direct Argentina to comply with its contractual obligations not to alter the rank of its payment obligations.") (emphasis added).

[16]    See NML I, 699 F.3d at 255-256, 262 (contending that Argentina had the "ability to violate [the contract] with impunity" through legislation that "clos[ed] the doors of its courts to judgment creditors").

payment to the creditors.[17]  The injunction in those cases was said to be

"exceptional" based on "extraordinary behavior."  NML Capital, Ltd. v. Republic

of Argentina, 727 F.3d 230, 247 (2d Cir. 2013) ("NML II").  Samaraneftegaz's

failure to satisfy the Judgment, in the face of Russian law prescribing criminal

penalties for doing so, does not come close to the type of "extraordinary" behavior

on which the NML courts relied.[18]

     Nor is there merit to Yukos Capital's assertion that Samaraneftegaz's

objections to discovery somehow caused irreparable injury that could support an

injunction.  Opp'n 46.  The District Court made no such finding, and Yukos

Capital has not cited any authority for the proposition that enjoining foreign

transfers is an appropriate discovery remedy under Rule 37.[19]  The remainder of

---

[17]   See NML II, 727 F.3d at 241(stating that Argentina has "gone considerably farther by passing legislation . . . specifically barring payments to FAA bondholders").

[18]   Although the NML injunctions had effects outside of the United States, the Court specifically found that the primary payment process at issue "without question takes place in the United States."  NML II, 727 F.3d at 244.  Here, the District Court's findings confirmed that the injunction targeted transactions that would not take place in the United States.  SPA-4-6.

[19]   Under the factors set forth in Linde, 706 F.3d at 109-10, any such sanction would be improper.  For example, the discovery concerns Samaraneftegaz's assets, all of which are in Russia; the requests are not targeted or specific; none of the requested information originated in the United States; and Russian authorities have made clear that compliance with the remaining discovery requests would undermine important Russian public interests and would subject Samaraneftegaz's personnel to risk of criminal sanction.

Yukos Capital's argument simply restates its erroneous assertions made in support of the Turnover Order. Opp'n 47. For reasons canvassed above, they have no merit. In any event, in the absence of irreparable injury, they could not support the injunction the District Court imposed.

Second, Yukos Capital wrongly asserts that New York law governs when and how a Russian company may distribute its Russian assets to its Russian shareholders. Yukos Capital's citation of <u>RCA Corp. v. Tucker</u>, 696 F. Supp. 845 (E.D.N.Y. 1988), does not support its argument to apply New York law. In <u>Tucker</u>, the court explained – consistent with Appellant's Br. 54 – that New York's conflict-of-law rules apply the law of the jurisdiction with the "most significant relationship" with the transaction. 696 F. Supp. at 854-855. In <u>Tucker</u>, there were numerous connections with New York that are not present here, chief among them that "New York has been the domicile of the judgment creditors throughout the pertinent time period and, until five years ago, was the domicile of the debtor and his wife, too" and "New York is also the situs of the disputed asset." <u>Id.</u> at 855. Under <u>Tucker</u>'s nexus analysis, New York law could not apply to transfers by a Russian company in Russia of Russian assets to Russian third parties.

Finally, <u>this</u> injunction could not be justified based on an argument that Yukos Capital might have been able to ask for a <u>different</u> injunction on different grounds under C.P.L.R. § 5222. Opp'n 44. The injunction it requested

23

and obtained was improper and improperly based on a faulty fraudulent-transfer analysis. Whether the District Court could grant different relief in the future based on different facts is irrelevant to Samaraneftegaz's appeal from the injunction actually entered.

## POINT THREE

## THE DISTRICT COURT ERRED IN ORDERING FURTHER DISCOVERY RESPONSES AND AWARDING ATTORNEY'S FEES

### A.    This Court Has Jurisdiction Over Samaraneftegaz's Appeal Of The Discovery Orders

Yukos Capital does not dispute the Court's jurisdiction to review the Turnover Order, and that jurisdiction "extends to all matters inextricably bound up with" such review. Lamar Adver. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 371 (2d Cir. 2004). Review of the Discovery Orders, like the Turnover Order, entails examination of substantially overlapping issues concerning the Russian law constraints on Samaraneftegaz's ability to facilitate use of Russian assets to pay the Judgment. Because of the substantial overlap of legal and factual issues with the Turnover Order, the Discovery Orders are reviewable, even if they were not independently appealable under 28 U.S.C. § 1292. Swarna v. Al-Awadi, 622 F.3d 123, 141 (2d Cir. 2010); Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 576 (2d Cir. 2005); N.Y. v. Shore Realty Corp., 763 F.2d 49, 51-52 (2d Cir. 1985).

Furthermore, the post-judgment award of attorney's fees as a discovery sanction is immediately appealable. See Lothian Oil (USA) Inc. v. Sokol, 526 F. App'x. 105, 107-08 (2d Cir. 2013) (reviewing post-judgment discovery sanctions order); Farmer v. Arabian Am. Oil Co., 324 F.2d 359, 361-62 (2d Cir. 1963), overruled on other grounds, 379 U.S. 227 (1964) (in a post-judgment proceeding "a judgment solely for costs is appealable"); see also Centennial Archaeology, Inc. v. AECOM, Inc., 688 F.3d 673, 674 (10th Cir. 2012); In re Mbakpuo, 52 F.3d 321, 1995 WL 224050, at *2 (4th Cir. 1995). Appellate review of the Discovery Orders is "necessary to ensure meaningful review" of the fee award, bringing it within this Court's pendent jurisdiction. Swarna, 622 F.3d at 141.

**B.     The Requested Information Is Outside The Scope Of Proper Post-Judgment Discovery**

Yukos Capital's arguments to find relevance in the discovery it seeks are based on an incorrect interpretation of the law. Opp'n 52-53. Tellingly, Yukos Capital does not contest that it cannot enforce the Judgment in Russia. Opp'n 52-53. Rather, Yukos Capital argues that this Court's decision in EM Ltd. v. Republic of Argentina, 695 F.3d 201 (2d Cir. 2012) ("EM"), and the Supreme Court's affirmance of that decision in Republic of Argentina v. NML Capital Ltd., 134 S. Ct. 2250 (2014) ("NML"), stand for the proposition that unconstrained post-judgment discovery of every document in a judgment debtor's possession is

25

permissible even where the assets at issue are indisputably not subject to enforcement.  Opp'n 52-53.

Yukos Capital is wrong.

Its argument ignores the importance of the district court's decision in EM to prohibit discovery about assets where enforcement was impossible: "'there is no use getting information about something that might lead to attachment in Argentina because that would be useless information' as no Argentinian court would allow sovereign property to be attached within the country."  695 F.3d at 204-05.  The District Court here should have followed the same wisdom, as confirmed by the Supreme Court:

> If bizarrely, NML's subpoenas had sought only "information that could not lead to executable assets in the United States or abroad," then Argentina likely would be correct to say that the subpoenas were unenforceable – *not* because information about nonexecutable assets enjoys penumbral "discovery immunity" under the [Foreign Sovereign Immunities] Act, but because <u>information that could not possibly lead to executable assets is simply not "relevant" to execution in the first place</u>.

NML, 134 S. Ct. at 2257, n.4 (emphasis added).

Unlike the plaintiffs in NML, Yukos Capital knows where Samaraneftegaz's assets are located – in the Russian Federation – and knows they

are not executable under Russian law.  See Appellant's Br. 55-56; supra at 6.[20]

Thus, the demand for further information here falls squarely in the "bizarre[]" and improper category of requests seeking "information that could not lead to executable assets in the United States or abroad."  NML, 134 S. Ct. at 2257, n.4.

Applying NML, the Third Circuit recently likewise confirmed that post-judgment discovery concerning assets against which enforcement of a judgment is impossible is not permissible.  Ohntrup v. Makina Ve Kimya Endustrisi Kurumu, 760 F.3d 290, 296-97 (3d Cir. 2014) (if the subjects of discovery "are immune from attachment, then the District Court should deny [the judgment creditor's] discovery request 'because information that could not possibly lead to executable assets is simply not relevant to execution in the first place.'" (quoting NML)).

Here, Samaraneftegaz has demonstrated and Yukos Capital has not contested that attachment of assets in Russia to enforce the Judgment is impossible.  Yukos Capital has thus failed the threshold showing of relevance, and the District Court erred in concluding otherwise.

---

[20]     Yukos Capital suggests there is a "question . . . whether Samaraneftegaz sells oil to Western oil companies," Opp'n 36 (citing JA-1117-67), but Samaraneftegaz demonstrated there is no such "question" because Yukos Capital based it on inadmissible hearsay that did not concern transactions involving Samaraneftegaz.  JA-1168-71.  Samaraneftegaz's discovery responses confirm that none of its counter-parties resides in, was organized under the laws of, or has its principal place of business in a country other than the Russian Federation.  JA-395-414; JA-359-60, ¶ 5; JA-1178-82.

Dissatisfied with the facts, Yukos Capital attempts to remove the argument to the hypothetical scenario in which "third parties" might hold "Samaraneftegaz's assets."  Opp'n 53.  Contrary to Yukos Capital's argument, however, Opp'n 54-55, the fact that Samaraneftegaz's counter-parties are located in Russia is determinative, because third parties in Russia are bound by the same Russian judgments as Samaraneftegaz, and Russian courts will not issue attachment or other enforcement orders that would conflict with the Russian Enforcement and Neft-Aktiv decisions.  See Appellant's Br. 34-36, 56; see also Samara Ruling at 6.

Yukos Capital's peculiar invocation of "other companies with whom Samaraneftegaz does business [which] also are willing to disregard the District Court's orders," Opp'n 53, falls for the same reason.  Likewise spurious is Yukos Capital's argument that discovery might enable it to bring other third-party claims.  Opp'n 54.  As explained supra at 24, there have been no "fraudulent transfers" to Samaraneftegaz's shareholder Neft-Aktiv or to Rosneft as a matter of applicable Russian law, and there is no basis for alleging that either is an "alter ego" susceptible to such a claim.  In any event, Yukos Capital has not sought and the District Court has not issued any orders directed at third parties.

Yukos Capital's recitation of the District Court's erroneous holding that the discovery requests were "properly tailored," Opp'n 57, does not fix the

facially improper breadth and burden of those requests.  For instance, there remains no justification for discovery of every document related to all of Samaraneftegaz's "work."  <u>See</u> Appellant's Br. 60.

Finally, Yukos Capital does not address or attempt to defend the fact that the District Court ultimately issued the Discovery Orders as punishment for Samaraneftegaz's "fail[ure] to satisfy its obligations under both the Judgment and the Turnover Order."  Appellant's Br. 61.  Discovery may not be ordered as a sanction but only upon showing that it is necessary and properly tailored to support execution.  The District Court's failure to adhere to that standard is an abuse of discretion.

## C.  The District Court Erred In Awarding Attorney's Fees

The Supreme Court's <u>NML</u> decision – rejecting discovery of information that cannot lead to executable assets – and the Samara Ruling – confirming Samaraneftegaz's inability to facilitate use of its Russian assets to satisfy the Judgment – further establish that Samaraneftegaz's opposition to the motion to compel was more than substantially justified.  The fee award therefore should be vacated.

## **CONCLUSION**

The Turnover Order and the Discovery Orders should be reversed,

and the District Court's award of attorney's fees in connection with the Discovery

Order should be vacated.


Dated:          October 24, 2014
                   Washington, D.C.

                                   Respectfully submitted,

                                   /s/ *Matthew D. Slater*
                                   Matthew D. Slater
                                   CLEARY GOTTLIEB STEEN &
                                        HAMILTON LLP
                                   2000 Pennsylvania Avenue, NW
                                   Washington, DC  20006
                                   Telephone: 202-974-1500
                                   Facsimile: (202) 974-1999
                                   mslater@cgsh.com

                                   *Attorneys for Respondent-Appellant OAO Samaraneftegaz*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(C)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,926 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word Version 14 in 14-point Times New Roman font.

Dated:     October 24, 2014
           Washington, D.C.

Respectfully submitted,

/s/ *Matthew D. Slater*

Matthew D. Slater
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-974-1500
Facsimile: (202) 974-1999
mslater@cgsh.com

*Attorneys for Respondent-Appellant OAO Samaraneftegaz*